# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-AN-01508-SCT

*IN THE MATTER OF THE ENLARGEMENT AND EXTENSION OF THE BOUNDARIES OF THE CITY OF MACON, MISSISSIPPI: FRANCES GOUSSET, KATHERINE MOORE, JERRY HARRIS, ORIETTA STEWART BY AND THROUGH RICHARD DOOLEY, RICHARD DOOLEY, INDIVIDUALLY, JAMES D. BRITT, GREGORY COLE, DARLENE COLE, JIM BRITT, EMILY BRITT, GENE PENICK, JR., PENICK FOREST PRODUCTS, WILLIAM M. DANTZLER AND WIFE, MARJORIE DANTZLER, CLAY HOLLIS, WILLIE COLE, MARY E. BROWN, GAYLE FORD, MINNIE WILLIAMS AND ARTHUR VARNER, JR.*

*v.*

*CITY OF MACON MISSISSIPPI*


DATE OF JUDGMENT:                    7/31/2001
TRIAL JUDGE:                         HON. DOROTHY WINSTON COLOM
COURT FROM WHICH APPEALED:           NOXUBEE COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANTS:             GARY GOODWIN
ATTORNEYS FOR APPELLEE:              JERRY L. MILLS
                                     CHARLES G. PERKINS
NATURE OF THE CASE:                  CIVIL - MUNICIPAL BOUNDARIES &
                                     ANNEXATION
DISPOSITION:                         AFFIRMED - 09/25/2003
MOTION FOR REHEARING FILED:
MANDATE ISSUED:


   EN BANC.

   McRAE, PRESIDING JUSTICE, FOR THE COURT:

¶1. On July 19, 2001, the Chancellor of the Noxubee County Chancery Court entered her opinion and judgment granting the City of Macon's request for extension and enlargement of the city boundaries. The Objectors to the annexation claim the Chancellor's ruling was not supported by substantial, credible evidence and was manifestly wrong. Finding that the Chancellor's ruling was supported by substantial, credible evidence as evaluated by the annexation indicia for reasonableness, we affirm the trial court's judgment.

### FACTS AND PROCEDURAL HISTORY

¶2. The City of Macon, which was incorporated in 1836, consists of 1.5 square miles. This is the City's first annexation.

¶3. In 1997, the City with the aid of an urban and regional planner conducted studies related to annexation. After the completion of these studies and public hearings on the issue of annexation, the City properly adopted an ordinance of annexation under Miss. Code Ann. § 21-1-27 (Rev. 2001). Pursuant to Miss. Code Ann. § 21-1-29, the City timely and properly filed a complaint for annexation seeking the extension and enlargement of the City to cover an additional 2.7 square miles. Proper notice of the complaint filing under Miss. Code Ann. § 21-1-31 was given by means of publication and posting. The City later reduced the area sought to be annexed to 2 square miles. This 2 square mile area is occupied by 31 businesses and 231 residences with 690 people.

¶4. The matter was tried in the Chancery Court of Noxubee County over a period of four days. Pursuant to Miss. Code Ann. § 21-1-33, the City had the burden of proving that the proposed annexation was reasonable. The City's witnesses consisted of Robert Brown ("Brown"), the City of Macon Police Chief; Charlie Fraley, the City of Macon Fire Chief; William Whitehead ("Whitehead"), the City of Macon Building Inspector; John Peters, the City of Macon Zoning Officer; Allen Hunter ("Hunter"), the City of

2

Macon Mayor; Larry Carr, a Superintendent of Public Protection for the Mississippi State Insurance Rating Bureau; Eugene Herring ("Herring"), an Environmental Health Program Specialist for the Mississippi Department of Health; and Michael Slaughter ("Slaughter"), expert planner for Bridge and Slaughter, an urban and regional planning firm.

¶5. During the trial, the Objectors proposed an alternate annexation area. The Objectors offered no expert testimony to support the alternate annexation area. The only difference between the alternate annexation area proposed by the Objectors and the annexation area proposed by the City was that the area in which the Objectors owned businesses and residences was "cut out" of the City's proposed area. The Objectors' witnesses consisted of 11 residents of the area proposed to be annexed. These witnesses included James Britt, William Dantzler, Richard Dooley ("Dooley"), Jerry Britt, Dan Ford, Frances Gousset, Willie Cole, Hazel Misso, Minnie Williams, Burt Sasser, and Shannon Hall. The main objection of all witness/residents was any increase in taxes due to the annexation of their property by the City of Macon.

¶6. On July 19, 2001, the Chancellor issued her opinion in favor of the City's annexation proposal. On July 31, 2001, the Chancellor issued her final order in favor of the City thereby approving of the enlargement and extension of the boundaries of the City of Macon, Mississippi. The Objectors filed, and the Chancellor denied a Motion to Reopen Proof. The Objectors filed a timely notice of appeal.

## STANDARD OF REVIEW

¶7. "Where the finding of reasonableness is challenged on appeal, this Court conducts no plenary review. It may reverse where – and only where – the chancery court's finding of ultimate fact that the annexation was (un)reasonable is manifestly wrong or without the support of substantial, credible evidence."

3

*In re Enlargement and Extension of Municipal Boundaries of City of Biloxi*, 744 So.2d 270, 277 (Miss. 1999) (citing *McElhaney v. City of Horn Lake*, 501 So.2d 401, 403 (Miss. 1987); *Extension of Boundaries of City of Moss Point v. Sherman*, 492 So.2d 289, 290 (Miss. 1986); *Enlargement of Boundaries of Yazoo City v. City of Yazoo City*, 452 So.2d 837, 838 (Miss. 1984); *In re Extension of Boundaries of City of Clinton*, 450 So.2d 85, 89 (Miss. 1984)).

¶8.     "Where there is conflicting credible evidence, we defer to the findings below." *In re Extension of the Boundaries of the City of Batesville, Panola County*, 760 So.2d 697, 699 (Miss. 2000) (quoting *Bassett v. Town of Taylorsville*, 542 So.2d 918, 921 (Miss. 1989)).

### DISCUSSION

I.     **WHETHER THE CHANCELLOR'S FINDING OF ULTIMATE FACT WAS MANIFESTLY WRONG OR WITHOUT THE SUPPORT OF SUBSTANTIAL, CREDIBLE EVIDENCE AS EVALUATED BY THE ANNEXATION INDICIA**.

¶9.     The Chancellor, after hearing all evidence presented, must under Miss. Code Ann. § 21-1-33 (Rev. 2001), determine if the proposed annexation is reasonable. Under Miss. Code Ann. § 21-1-33, the trial judge has the discretion to allow for partial approval of the proposed annexation thereby excluding any portion of the land sought to be annexed.

¶10.     This Court has recognized and developed a list of indicia of reasonableness to be used when evaluating a petition for annexation. These indicia include: (1) The City's need for expansion; (2) Whether the proposed annexation area (PPA) is within the path of growth of the City; (3) Potential health hazards from sewage and waste disposal in the annexed area; (4) The City's financial ability to make the improvements and provide promised municipal services; (5) Need for zoning and planning in the area; (6) Need for municipal services in the proposed annexed area; (7) Whether there are natural barriers between

4

the City and the proposed annexation area; (8) The past performance and time element involved in the City's provision of services to its present residents; (9) The economic or other impact of the annexation upon those who live in or own property in the area proposed to be annexed; (10) The impact of the annexation upon the voting strength of protected minority groups; (11) The economic or other benefits received by those in the proposed annexation area without playing their fair share of taxes; and (12) Any other reasonableness factors. These factors are only indicia of reasonableness, not separate and distinct tests in and of themselves.  The Chancellor must consider all of these factors and determine whether under the totality of the circumstances the annexation is reasonable.  This Court's standard of review is very limited. The Court can only reverse the chancery court's findings as to the reasonableness of an annexation if the chancellor's decision is manifestly wrong and is not supported by substantial and credible evidence. *See Matter of Enlargement of Corp. Limits of City of Hattiesburg*, 588 So.2d 814, 819 (Miss. 1991); *In re Boundaries of City of Vicksburg*, 560 So.2d 713, 716 (Miss. 1990); *In re Enlargement of Corporate Boundaries of the City of Booneville*, 551 So.2d 890, 892 (Miss. 1989)  *City of Horn Lake*, 501 So.2d at 403-04; *In re Extension of the Boundaries of City of Jackson,* 551 So.2d 861, 864 (Miss. 1989); *City of Greenville v. Farmers, Inc.*, 513 So.2d 932, 941 (Miss. 1987); *Bassett*, 542 So.2d at 921; *Western Line Consol. Sch. Dist. v. City of Greenville*, 465 So.2d 1057, 1059 (Miss. 1985);  *Yazoo City*, 452 So.2d at 842-43; *Texas Gas Transmission Corp. v. City of Greenville*, 242 So.2d 686, 689 (Miss. 1971); *Dodd v. City of Jackson*, 238 Miss. 372, 118 So.2d 319, 330 (1960); *Forbes v. City of Meridian*, 86 Miss. 243, 38 So. 676, 678  (1905).

¶11. Using this list of indicia, the Chancellor considered all the evidence presented during the four-day trial and concluded that the City of Macon's petition for extension and enlargement should be granted. There was substantial, credible evidence to support the Chancellor's findings.

## A. NEED FOR EXPANSION

¶12. This Court has enumerated many factors to consider when determining whether a City seeking an extension and enlargement has a reasonable need for expansion. These factors may or may not include: (1) spillover development into the proposed annexation area; (2) the City's internal growth; (3) the City's population growth; (4) the City's need for development land; (5) the need for planning in the annexation area; (6) increased traffic counts; (7) the need to maintain and expand the City's tax base; (8) limitations due to geography and surrounding cities; (9) remaining vacant land within the municipality; (10) environmental influences; (11) the city's need to exercise control over the proposed annexation area; and (12) increased new building permit activity. *In re Enlargement and Extension of Mun. Boundaries of City of Biloxi*, 744 So.2d at 279; *Matter of Enlargement and Extension of the Mun. Boundaries of the City of Jackson*, 691 So.2d 978, 980 (Miss. 1997); *Extension of Boundaries of City of Ridgeland v. City of Ridgeland*, 651 So.2d 548, 552 (Miss. 1995); *Matter of Extension of Boundaries of City of Columbus*, 644 So.2d 1168, 1173 (Miss. 1994). However, the Chancellor used these factors in determining whether the City had a need for expansion. Her decision was based on credible, substantial evidence and detailed in her opinion.

¶13. The Objectors do not dispute that the City of Macon has a need for expansion, but argue that this need for expansion does not include the need to annex the "cut out" area (the area which the Objectors argue should be excluded from the proposed annexation area).

6

¶14.    Spillover development has occurred in the PAA, and is evidenced by the growth along U.S. Highway 45 which runs through the area and into the City.  In the past 10 years, 31 new businesses have opened in the PAA and more businesses and industries are currently building in the area.  The Objectors argue that none of the spillover development has occurred in the "cut out" area; and therefore, that area should be excluded from the annexation.

¶15.    The Chancellor found that the City of Macon is growing internally.   The existing City of Macon encompasses only 1.5 square miles.  The City is 72.3% built out.  In the case of *In re Extension and Enlargement of the Mun. Boundaries of the City of Biloxi*,  this Court found a definite need for expansion upon a showing that Biloxi was 85% built out.  744 So.2d at 279.  Additionally, there are only 236 vacant acres in the municipality, and 169 of those acres are unsuitable for building since they are located in a floodplain.  Hunter, the Mayor of the City of Macon, testified that a grocery store chain is currently inquiring into buying land in the City but has been unable to find a suitable building site.  This lack of building room has caused a spillover of development into the proposed annexation area.

¶16.    The Chancellor found that statistics from the 1990 Census establish that over the last 10 years, the population of the City has decreased by 17 persons.  This slight decrease was found to be of little significance since the municipality has continued to grow and develop as the business hub of Noxubee County.   Expert testimony also showed that households nationwide are getting smaller.  Additionally, the City's appellate brief states that current data now indicates that the population of Macon has increased by 222 persons which is a 10% growth.  The Objectors argue that the 17 person decrease in population growth is a significant statistic to be considered by the Chancellor.

¶17.    The Objectors' argument that the land in the "cut out" area has little residential and commercial growth is without merit.   The 17 person decrease in City population does not demonstrate that the City

7

lacks a need for residential development. This vacant and unconstrained land is necessary to accommodate the future growth of the City of Macon.

¶18. The Chancellor found that there are no planning or zoning ordinances in place in the PAA. The City of Macon has planning and zoning ordinances in effect which include comprehensive building codes. The area along Highway 45 has developed without any planning causing a patchwork quilt of businesses and residences. The lack of zoning in the PAA has resulted in mobile homes situated next to businesses. Additionally, the evidence at trial showed plans for a hotel to be built next to a house and a poll mill located next to a church. This demonstrates the City's need to control the building and development in the PAA. The enforcement of zoning and building codes is necessary for public safety and fire prevention.

¶19. The Objectors argue that the "cut out" area is not located near the growing Highway 45 area and, therefore, not in need of the same City control. Additionally, the objectors argue that no specific evidence was presented as to a need for zoning in the "cut out" area. They argue that all residents and landowners in the "cut out" area are happy with the development trends and find no need for zoning which would restrict the use of their land. Likewise, they argue that the Chancellor made no specific findings as to a zoning need in the "cut out" area. ¶20. The Chancellor found that the increased growth and development along Highway 45 has created increased traffic. This increased traffic flow creates a need for police protection and patrol. Additionally, the City produced evidence that nightclubs in the County had resulted in numerous disturbances that required police response. The Objectors argue that evidence presented by the Police Chief as to the increase in traffic in the proposed annexation area is without credibility.

¶21. The Chancellor further found that the new developments and businesses in the proposed annexation area have created substantial sales tax, estimated to be between $70,000 and $80,000 in the next year, which currently is collected and kept by the State. If the area were annexed by the City, a portion of

8

those taxes would be given back to the City. The increased sales tax in the annexation area is caused by the City's build-out. The Objectors offered no evidence as to the increased sales tax revenue in the proposed annexation area and only testified as to their contribution to the City of Macon through their purchases at local businesses.

¶22. The Chancellor made no findings as to the geography and surrounding limitations to growth. Evidence shows that areas of vacant land in the City lie in a floodplain. Also, evidence at trial showed that other areas near the city are unsuitable for development since they lie in a floodplain.

¶23. The Chancellor made no findings as to environmental influences. No evidence at trial was presented by either parties as to this issue.

## B. PATH OF GROWTH

¶24. The test for evaluating the reasonableness of a chosen path of growth is "whether an area is in a path of growth, not necessarily a City's primary path of growth."*In re City of Horn Lake*, 630 So.2d 10, 19 (Miss. 1993). This Court has further stated that "our law gives municipalities the discretion, based on convenience and necessity, to choose between various paths of growth by annexation." *Ritchie v. City of Brookhaven*, 217 Miss. 860, 65 So.2d 436, 439 ( 1953). The law is clear that the annexation area must be in "a" path of growth not "the" path or "only" path of growth. The Objectors' argument that there are other paths of growth suitable for annexation is without merit.

¶25. This Court has established factors for consideration when evaluating reasonableness as it relates to the path of growth which may or may not include: (1) spillover development in annexation area; (2) annexation area immediately adjacent to City; (3) limited are available for expansion; (4) interconnection by transportation corridors; (5) increased urban development in annexation area; (6) geography; and (7) subdivision development. *In re Extension and Enlargement of the Mun. Boundaries of the City*

9

*of Biloxi*, 744 So.2d at 280; *Enlargement and Extension of Mun. Boundaries of City of Madison v. City of Madison*, 650 So.2d 490, 497 (Miss. 1995); *Extension of Boundaries of City of Ridgeland*, 651 So.2d at 556. This Court in *Enlargement and Extension of Mun. Boundaries of City of Meridian v. City of Meridian*, 662 So.2d 597, 612-13 (Miss. 1995), held that the most important factors when determining the reasonableness of path of growth are the adjacency of the proposed annexation area to the City, accessibility of the proposed annexation area by City streets, and spillover of urban development into the proposed annexation area.

¶26.    The Chancellor used these factors in evaluating the City's petition for annexation. She relied on credible, substantial evidence in ruling that the City's annexation proposal was reasonable.      The Chancellor found that spillover has caused substantial commercial and residential development in the PAA. Since 1990, the PAA has seen a 15% increase in population. There are 3 churches, a convenience store, 2 industries, a power association, an elderly care center, an apartment complex, a hotel, and a restaurant in the PAA.   At the time of trial, additional businesses were being built in the PAA which included a hotel, a catfish plant, and a Kentucky Fried Chicken restaurant. Photographs in evidence demonstrated that absent signs one would not know when he had left the city and entered the PAA due to the increased business development.

¶27.    Objectors argue that the "cut out" area has not had spillover development. They argue that the "cut out" area should be excluded from the annexation since it is not more in the path of growth than other areas excluded. These arguments are without merit. The vacant and undeveloped land in the "cut out" area is needed for future development. The Chancellor found and the evidence shows that the PAA is immediately adjacent to the City of Macon. Evidence presented at trial demonstrates that the PAA is contiguous and adjacent to the existing City.

¶28. The Chancellor found that the City is limited to only 169 areas of unconstrained land available for development. The parcels of land available for development are scattered and small. This limits the City's ability to grow and develop.

¶29. The Chancellor made no findings on the transportation connections between the City of Macon and the PAA. However, evidence at trial was undisputed that the City and the PAA share the same roads and highways.

¶30. The Chancellor made no findings on the geography of the City and the PAA. Evidence presented at trial showed that portions of the City of Macon are located in a floodplain. Likewise, evidence showed that the land the Objectors propose for annexation is located in a floodplain.

¶31. The Chancellor made no specific findings as to subdivision developments. She did, however, note the 124 new building permits for residential units within the City over the last 10 years. Evidence at trial also indicated that areas in the PAA were being used for subdivision development.

¶32. The Objectors argue that there has been no subdivision development in the "cut out" area. They further argue that they have had no offers to subdivide and develop their land for residential or commercial use. This is without merit since their vacant and undeveloped land is necessary for future growth.

## C. POTENTIAL HEALTH HAZARDS

¶33. This Court has established a number of factors to be considered when evaluating the reasonableness as related to potential health hazards which may or may not include: (1) potential health hazards from sewage and waste disposal; (2) a large number of septic tanks in the area; (3) soil conditions which are not conducive to on-site septic systems; (4) open dumping of garbage; and (5) standing water and sewage. *In re Extension and Enlargement of the Mun. Boundaries of the City of Biloxi*, 744 So.2d at 280; *In re Extension of Corporate Boundaries of the Town of Mantachie*, 685

11

So.2d 724, 727 (Miss. 1996); *Extension of the Boundaries of City of Ridgeland*, 651 So.2d at 558; *City of Horn Lake*, 630 So.2d at 18; *In re Matter of the Extension of the Boundaries of the City of Jackson,* 551 So.2d at 866; *City of Greenville*, 513 So.2d at 935.

¶34.    The Chancellor used these factors in evaluating the potential health hazards of the PAA. She relied on credible, substantial evidence in her evaluation.

¶35.    The Chancellor relied on photographs, maps, and expert testimony which evidence open sewage lines and inadequate discharge of raw sewage.   Herring, an Environmental Health Program Specialist for the Mississippi Department of Health, offered  testimony as to the grave health hazards posed by raw sewage located near private wells for drinking water in the PAA.   Diseases found to be caused by raw sewage leakage include salmonella, rotavirus, hepatitis A, and typhoid fever.    A number of failing septic systems were found to be in the PAA.   In the PAA, 64.5% of the dwelling units and 56.4% of commercial buildings already use the City's sewer system.  No health hazards were discovered in those areas using the City's system.  Dooley, an Objector, acknowledged in his testimony that he has a raw sewage problem on his land.    Additionally, the City provides 100% of its residents with sewer services.

¶36.    The Chancellor found that the soil conditions in the proposed annexation area were not conducive for septic tank systems.  Information from the United States Soil Conservation Service indicates that the PAA is not suitable for septic tank usage.    The Objectors offered no evidence to rebut this testimony.

¶37.    The Chancellor found that trash piles and junkyards littered the PAA.   The City and County use the same disposal service.  However, the Chancellor further found that the City has zoning ordinances that would prevent dumping.

¶38.    Zoning and building ordinances would also assure the safety of  annexation area residents. Whitehead, the City's Building Inspector, testified that inspection of electrical, structural, plumbing, and gas

in proposed building projects provides citizens protection from potential hazards caused by faulty workmanship or improper building techniques. These inspections would help to reduce the health hazards caused by unsupervised building in the PAA.

¶39. The Objectors argue that the City is unable to identify any ordinance that it could enforce which would lead to any clean up of the areas found to be health hazards. The only City ordinance related to the reported health hazards is one that would require sewage hook ups. These sewer hook ups could remedy some of the problems. The City's sewer plan calls for full sewer installation and service in the PAA over a period of 5 years. Many PAA residents are already hooked up to City sewer. The Objectors argue the 5 year installation plan is inadequate. The Objectors rely on *City of Columbus*, where the Objectors there stated, "it makes no sense to cite potential health hazards as a reason for annexation when no solution to the potential problem is offered." 644 So. 2d at 1175-76. The Objectors further argue that the City has several unsightly trash heaps of its own.

### D. FINANCIAL ABILITY

¶40. This Court has developed several factors to evaluate reasonableness as related to financial ability which may or may not include: (1) present financial condition of the municipality; (2) sales tax revenue history; (3) recent equipment purchases; (4) the financial plan and department reports proposed for implementing and fiscally carrying out the annexation; (5) fund balances; (6) the City's bonding capacity; and (7) expected amount of revenue to be received from taxes in the annexed area. *Town of Mantachie*, 685 So.2d at 728; *City of Meridian*, 662 So.2d at 611; *Extension of Boundaries of City of Ridgeland*, 651 So.2d at 558; *City of Columbus*, 644 So.2d at 1171; *City of Greenville v. Farmers, Inc.*, 513 So.2d at 935; *In re Extension of Boundaries of City of Ridgeland*, 388 So.2d 152, 156 (Miss. 1980); *In re Extension and Enlargement of the Mun. Boundaries of the*

13

*City of Biloxi*, 361 So.2d at 1374; *Bridges v. City of Biloxi*, 253 Miss. 812, 178 So.2d 683, 685 (1965); *In re City of Gulfport*, 253 Miss. 738, 179 So.2d 3, 6 (1965).

¶41.    The Chancellor used these factors in evaluating reasonableness as related to the financial ability of the City of Macon in the annexation of the proposed area.  There was substantial and credible evidence to show that the City had the financial ability to successfully annex the proposed area.

¶42.    The Chancellor found and the evidence showed that the City is financially capable of successfully funding and completing the annexation of the proposed area.  City audits and exhibits presented at trial indicate the City is in excellent financial condition.  The City has ample cash reserves and little bonded debt. The Objectors argue that the financial ability of the City is of little importance since the City already provides many services to the PAA.  The Objectors offer no evidence to rebut the City's financial ability to complete a successful annexation.

¶43.    The Chancellor made no findings as to the sales tax revenue history of the City of Macon. However, evidence presented at trial demonstrated that the City has $23,000 to $25,000 a month in sales tax revenue.

¶44.    The Chancellor made no findings as to recent equipment purchases of the City of Macon. However, evidence presented at trial showed that the City had recently purchased additional equipment for its fire department and had ordered a new patrol car for the police department.

¶45.    The Chancellor found that the City has a financial plan for fiscally carrying out the annexation. The City conducted extensive preannexation studies and hired urban development planners to analyze the need and direction of a proposed annexation.  Expert testimony from Slaughter indicated that the City could financially afford to fund the necessary engineering tasks needed in the PAA.   The City outlined its proposed services and improvements for the annexation area and illustrated its financial capability of

14

achieving those improvements over the next five years. The City outlines its future improvement and services plan through exhibits which detail the estimated costs and revenues produced from such additions. The City has already committed funds to be used in the planning, zoning, and development of the PAA. The City has a sound financial plan which includes the addition of more personnel and equipment to meet the needs of the PAA area. If the annexation is completed the City plans to hire a full-time building inspector, an additional police patrolman, and a full time zoning officer. The City further plans to install street lighting, provide mosquito control, install fire hydrants, and repave and repair streets. All the evidence illustrates that the City has the financial ability to make the improvements needed and provide the municipal services to the PAA within a reasonable time.

¶46. The Objectors argue that the City's financial plan is inadequate since the plan calls for improvements and the addition of services over the next five years. Testimony at trial indicated that given the City's financial stability these improvements and services may be instituted much sooner. This Court has approved similar plans with time periods extending as long as five years. In the case of *In re Extension and Enlargement of the Mun. Boundaries of the City of Biloxi*, this Court stated that "[p]lans that call for extension of services into annexation areas when economically feasible are not 'per se unreasonable.' " 744 So.2d at 282. *See also* **Town of Mantachie**, 685 So.2d at 729 (citing **City of Columbus**, 644 So.2d at 1182). In the case of **In re Extension and Enlargement of the Mun. Boundaries of the City of Biloxi**, this Court approved an improvement and services plan which outlined the installation of sewer and water lines in the annexation area over the next five years. 744 So.2d at 282. Additionally, here much of the area in the PAA already has City water and sewer lines. Even the "cut out" area that Objectors argue should be excluded from annexation is served by City water. And those "cut out" area residents would see a reduction in their water bill if the annexation is completed due

15

to the elimination of a water surcharge fee placed on non-residents who use municipal water services.

¶47.    The Chancellor found that currently the City has cash reserves.   Testimony also indicated that the City of Macon is eligible for receiving grant funds.   The Chancellor found and the evidence indicates that the City has little bonded debt.

¶48.    The Chancellor made no findings as to the expected tax revenue from the annexation area. However, evidence presented at trial showed that currently the annexation area has between $70,000 and $80,000 in annual sales tax revenue.

### E.  NEED FOR ZONING AND PLANNING

¶49.    The Chancellor found that the City has zoning and building ordinances in place whereas Noxubee County has no zoning and no plan for development.  This Court has approved annexations even where the City does not plan to provide zoning and planning and where the County has in force its own zoning and planning ordinances. *Town of Mantachie*, 685 So.2d at 728; *Extension of Boundaries of City of Ridgeland*, 651 So.2d at 559.   The County has countless examples of incompatible land use and allows building without inspections.  The City plans to provide a full-time building inspector upon the completion of the annexation.  The Objectors argue that the "cut out" area does not need zoning or planning ordinances. They argue that the rest of the PAA  may be in need of zoning but their area does not need such laws since there is limited growth.  Zoning and planning are needed in the proposed annexation area in order to ensure public safety and welfare.

¶50.    The Objectors attack the City's enforcement of its zoning ordinances.  The Objectors' evidence of the City's incompatible land use predates the enactment of current building and zoning ordinances and are

16

essentially nonconforming uses. The City acknowledged its awareness of these problems and has recently employed personnel to handle the issue.

## F. NEED FOR MUNICIPAL SERVICES

¶51. This Court has established factors to consider when evaluating reasonableness as it relates to need for municipal services which may or may not include: (1) requests for water and sewage services; (2) plan of the City to provide first response fire protection; (3) adequacy of existing fire protection; (4) plan of the City to provide police protection; (5) plan of City to provide increased solid waste collection; (6) use of septic tanks in the proposed annexation area; and (7) population density. *Enlargement and Extension of the Mun. Boundaries of City of Madison*, 650 So.2d 490, 502 (Miss. 1995); *Extension of Boundaries of City of Ridgeland*, 651 So.2d at 559; *City of Horn Lake*, 630 So.2d 10, 21 (Miss. 1993). ¶52. This Court has also addressed how these factors are applied when addressing sparsely populated areas and densely populated areas. This Court found that in sparsely populated areas, there is less of a need for immediate municipal services. *In re Matter of the Extension of the Boundaries of the City of Jackson*, 551 So.2d at 867. Evidence presented at trial shows the PAA is a densely populated area.

¶53. The Chancellor found that an increase in residential units and commercial/industrial businesses in the PAA creates a demand for water and sewer services. The City currently provides sewer service to a portion of the PAA and has plans to install water and sewer lines to the remaining area. Statistics show that 90% of annexation area residents and 74% of annexation area businesses already receive City water. Additionally, 64.5% of annexation area residents and 56.4% of annexation area businesses receive City sewer services. Hunter, Mayor of the City of Macon, also testified that the City has received requests from residents and businesses in the annexation area for the City's sewer and water services.

17

¶54. The Chancellor found that the PAA has a need for city fire protection. The City currently provides fire protection to the PAA. The City has on duty fire department personnel with 19 firefighters, while the County has a totally volunteer fire department. Testimony at trial also established that the fire department was currently organizing and acquiring funding for an emergency medical response program. The Chancellor found that a full time fire department with paid personnel are likely to provide the most comprehensive service.

¶55. Testimony at trial indicated that the Mississippi Rating Bureau has assigned a Class 10 fire rating to the entire annexation area while the City has a Class 7 fire rating which entitles its residents to a discount on their fire insurance rating. Objectors argue that they already receive the discount for a Class 7 fire rating; and therefore, the annexation would not affect their premiums. However, the insurance company voluntarily assigned these residents with a Class 7 rating and under the terms of the policy are able to decline to insure them at the Class 7 discount in the future. Objectors also point to the fact that currently the City receives financial benefits for providing the County with fire protection services. Additionally, the Objectors argue that they do not need the City's fire protection since the County has a fire department. This Court has reversed a Chancellor's finding that there was no need for municipal level fire protection in an area served by a Class 10 volunteer fire department. *City of Horn Lake*, 630 So.2d at 21.

¶56. The Chancellor found that the PAA has a need for City police protection. The City currently provides some protection to the residents through back up assistance to the County Sheriff's department. The City currently has 10 patrolmen with plans to add one more if the annexation is approved. Additionally, the City has a new patrol car on order. Brown, the Chief of Police, testified that the annexation area is in need of increased patrolling to control speeders. The Sheriff's department only has 5 deputies in charge of patrolling the whole County. Objectors argue that they are satisfied with the Sheriff's patrol.

18

¶57.     The Chancellor made no findings as to the need for or a City plan for increased solid waste collection. Currently the City and County use the same provider for solid waste collection and disposal.

¶58.     The Chancellor made no specific findings as to the use of septic tanks in the annexation area, but as indicated earlier evidence showed that septic tanks systems in the area are failing and creating health hazards for residents.  The City plans to remedy this problem through the installation of sewer lines and through the enforcement of zoning ordinances.

¶59.     The Chancellor noted the increase in population in the PAA. Statistics show that the population has increased in the area from 231 persons per square mile in 1990 to 255 persons per square mile in 2000. Evidence also shows that the number of dwelling units over the last 10 years has grown.

## G.  NATURAL BARRIERS

¶60.     The test for evaluating reasonableness as it relates to natural barriers is as follows, " it is not a constraint upon development that establishes unreasonableness under the natural barriers concept but rather a condition that makes provision of municipal services impossible or prohibitively expensive." *City of Columbus,* 644 So.2d at 1175 (citing *City of Biloxi v. Cawley*, 332 So.2d 749, 751 (Miss. 1976)).

¶61.     The Chancellor found that there are no natural barriers between the City and the proposed annexation area. Objectors argue that other areas are better candidates for annexation. But this argument ignores the fact that these areas are constrained by the existence of a floodplain.  The mere existence of constraints, such as a floodplain, does not necessarily make the suggested path of growth unreasonable, but under the circumstances here the PAA is the most reasonable path of growth.

## H.  PAST PERFORMANCE

¶62. The Chancellor made no findings on the City's past performance since this is the City's first annexation.

¶63. Looking to the City's current performance for its residents reveals that the City provides adequate and comprehensive services. The City provides 100% of its residents with water and sewer. The City provides fire and police protection for its residents and many in the PAA. The City of Macon provides trash and garbage collection, street lighting, parks and recreation facilities, streets, drainage, and animal control. Additionally, the City provides comprehensive zoning and planning ordinances to provide safety to its residents.

¶64. The Objectors claim the City is neglectful in providing zoning enforcement to its residents; and therefore, this indicates a standard of poor performance. They offer examples of dilapidated dwellings and unsanitary property of residents. The Objectors argue that the City is not providing its own residents with the services it purports to be capable of providing the residents of the PAA.

## I. FAIRNESS/EQUITY EVALUATION

¶65. This Court in *City of Columbus* stated, "Although we retain our 'indicia' for the purpose of today's decision, we emphasize that fairness to all parties has always been the proper focus of our reasonableness inquiry. Thus, we hold that municipalities must demonstrate through plans and otherwise, that residents of annexed areas will receive something of value in return for their tax dollars in order to carry the burden of showing reasonableness." 644 So.2d at 1172. Additionally, this Court in the case of *In re Matter of the Extension of the Boundaries of the City of Jackson*, stated, "the Court is required to balance the equities by comparing the City's need to expand and any benefits accruing to residents from the annexation with any adverse impact, economic or otherwise, which will probably be experienced by those who live in

and own property in the annexation area. The mere fact that residents and landowners will have to start paying city property taxes is not sufficient to show unreasonableness." 551 So.2d at 867-68.

¶66. The Chancellor used these standards in evaluating the fairness/equity of the proposed annexation. She used substantial, credible evidence in making this evaluation.

¶67. The Chancellor found that the Objectors' main complaint of higher taxes cannot defeat the proposed annexation. As stated above, this Court has found that increased taxes alone is not enough to find an annexation unreasonable. *Id.* The payment of City taxes would be offset by the savings on fire insurance the landowners in the PAA would receive. Objectors argue this is irrelevant since many residents in the PAA already receive the Class 7 fire insurance rating discount. This ignores the fact that any such rating benefit is currently voluntary by the insurance company since these residents do not live in a Class 7 rated zone. The residents would also receive a decrease in their water and sewer rates. Also, the proposed tax impact on area residents appears to be minimal. The additional net taxes on uncultivated and cultivated land would be between $6.16 and $57.42 annually depending on acreage.

¶68. Additionally, the residents and landowners in the proposed annexation area would receive improved police protection, fire protection, public works, streets and drainage maintenance, paving of streets, street lighting, zoning, building codes, planning and enforcement, water, and sewer services. These benefits are well worth the additional taxes residents would be forced to pay. When the equities are balanced, the evidence shows the proposed annexation to be reasonable.

## J. VOTING STRENGTH OF PROTECTED MINORITY GROUPS

¶69. The Chancellor found and statistics indicate that the annexation would not negatively impact the voting strength of any protected minority groups. Currently the City's population is 42% white and 58% nonwhite. The annexation area's population is 39.2% white and 60.8% nonwhite. These statistics indicate

21

that the annexation will not substantially decrease the protected minority voting strength. The Objectors do not contest this issue.

### K. BENEFITS TO PROPERTY OWNERS IN PROPOSED ANNEXATION AREA WITHOUT PAYING THEIR FAIR SHARE OF TAXES

¶70. The Chancellor found that the City of Macon is the financial hub of Noxubee County and that many businesses situated in the annexation area are benefitting from their association with the City. It was further found that many businesses in the annexation area even included the City's name in their business name. Residents and landowners in the PAA benefit from the use of City water, City sewer, City fire protection, City police protection, 2 city parks, and association with the City of Macon. The Objectors argue that there has been no substantial business or industrial growth in the "cut out" areas that would indicate the benefits of City association are being used by those residents. Relying on *City of Columbus*, the Objectors argue that county residents shop in the City of Macon and have to pay sales taxes like other City residents; and therefore, no benefit is being taken without contribution. 644 So.2d at 1182. The City relies on *Bassett* in arguing that the proximity of these residents and business owners affords them benefits. 542 So.2d at 922.

### L. OTHER FACTORS THAT MIGHT SUGGEST REASONABLENESS

¶71. The Chancellor made no findings as to other factors influencing her decision to grant the City's petition for annexation.

### CONCLUSION

¶72. The Chancellor relied on substantial, credible evidence and did not commit manifest error in approving the City of Macon's petition for annexation. She correctly applied the factors of reasonableness

22

and delivered a comprehensive and detailed opinion as to the facts and case law supporting a finding of reasonableness. Therefore, the learned Chancellor's judgment is affirmed.

¶73. **AFFIRMED.**

**SMITH, P.J., COBB, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. WALLER, J., CONCURS IN RESULT ONLY. PITTMAN, C.J., AND DIAZ, J., NOT PARTICIPATING.**