# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-AN-00826-SCT

*IN THE MATTER OF THE ENLARGEMENT AND
EXTENSION OF THE CORPORATE LIMITS AND
BOUNDARIES OF THE CITY OF SOUTHAVEN,
MISSISSIPPI: CITY OF HORN LAKE,
MISSISSIPPI, CITY OF OLIVE BRANCH,
MISSISSIPPI, CITY OF HERNANDO,
MISSISSIPPI, TOWN OF WALLS, MISSISSIPPI,
SUMMERWOOD, WHITTEN PLACE
HOMEOWNERS ASSOCIATIONS AND OTHER
INDIVIDUAL OBJECTORS*

*v.*

*CITY OF SOUTHAVEN, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/10/2007 |
| TRIAL JUDGE: | HON. MITCHELL M. LUNDY, JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | JAMES H. HERRING |
| ATTORNEYS FOR APPELLEE: | JERRY L. MILLS |
| | MARK SORRELL |
| NATURE OF THE CASE: | CIVIL - MUNICIPAL BOUNDARIES & ANNEXATION |
| DISPOSITION: | AFFIRMED - 01/15/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     The Chancery Court of DeSoto County found that the City of Southaven's proposed

annexation was reasonable and granted the annexation. We affirm.

## BACKGROUND FACTS AND PROCEEDINGS

¶2.     The City of Southaven ("the City") sought to annex three separate parcels; specifically, property to the northeast (the "Northeast Parcel"), to the south and to the northwest of the city.  The Northeast Parcel is bordered on three sides by the City of Southaven and, on the fourth, by the City of Olive Branch.

¶3.     On March 5, 2004, the City filed its petition to annex in the Chancery Court of DeSoto County.  On October 27, 2005, Summerwood Homeowners' Association, Whitten Place Homeowners' Association, and individual objectors (collectively, "the Objectors") filed a motion to dismiss challenging the accuracy of the description of the proposed annexation area (the "PAA").  The chancery court ruled that the description of the PAA was defective, but denied the other relief sought in the motion.  On February 10, 2006, the City filed an amended petition in response.  Thereafter, a bench trial was scheduled for September 18, 2006.

¶4.     In its final judgment, the chancellor found that the proposed annexation was reasonable in its entirety and granted the annexation.  The Objectors appeal only as to the annexation of the Northeast Parcel.

## ANALYSIS

¶5.     In annexation matters, this Court employs a limited standard of review and will reverse a chancellor's decision only if it is manifestly wrong and not supported by substantial and credible evidence.  *Town of Marion v. City of Meridian (In re Enlarging, Extending & Defining the Corporate Limits & Boundaries of the City of Meridian)*, 992 So. 2d

1113, 1116 (Miss. August 14, 2008) (citing *In re Extension of Boundaries of City of Hattiesburg*, 840 So. 2d 69, 81 (Miss. 2003)).

¶6. Summarily, the appellate review is limited to the question of whether the annexation is reasonable, under the totality of the circumstances. See *Lamar County v. City of Hattiesburg (In re Extension of the Boundaries of Hattiesburg)*, 840 So. 2d 69, 73 (Miss. 2003). To determine the reasonableness of the annexation, this Court has laid out twelve indicia of reasonableness which are not separate, independent tests, but rather need to be considered under the totality of circumstances. *Mun. Boundaries v. City of Madison,* 650 So. 2d 490, 494-95 (Miss. 1995). These indicia of reasonableness are:

> (1) the municipality's need to expand, (2) whether the area sought to be annexed is reasonably within a path of growth of the city, (3) potential health hazards from sewage and waste disposal in the annexed areas, (4) the municipality's financial ability to make the improvements and furnish municipal services promised, (5) need for zoning and overall planning in the area, (6) need for municipal services in the area sought to be annexed, (7) whether there are natural barriers between the city and the proposed annexation area, (8) past performance and time element involved in the city's provision of services to its present residents, (9) economic or other impact of the annexation upon those who live in or own property in the proposed annexation area, (10) impact of the annexation upon the voting strength of protected minority groups, (11) whether the property owners and other inhabitants of the areas sought to be annexed have in the past, and in the foreseeable future unless annexed will, because of their reasonable proximity to the corporate limits of the municipality, enjoy economic and social benefits of the municipality without paying their fair share of taxes, and (12) any other factors that may suggest reasonableness.

*Madison,* 650 So. 2d at 494.

(1)     Need to expand

¶7. When determining a city's need for expansion, this Court has considered many factors, including:

3

(1) spillover development into the proposed annexation area; (2) the City's internal growth; (3) the City's population growth; (4) the City's need for development land; (5) the need for planning in the annexation area; (6) increased traffic counts; (7) the need to maintain and expand the City's tax base; (8) limitations due to geography and surrounding cities; (9) remaining vacant land within the municipality; (10) environmental influences; (11) the city's need to exercise control over the proposed annexation area; and (12) increased new building permit activity.

*In re Extension of Boundaries of City of Winona,* 879 So. 2d 966, 974 (Miss. 2004) (citing

*In the Matter of the Enlargement and Extension of the Boundaries of the City of Macon*,

854 So. 2d 1029, 1034 (Miss. 2003)).

¶8.    The City is a rapidly developing city with a population increase of twenty-five percent in the four years that followed the 2000 census. Chris Watson, the City's Urban Regional Planner, testified that the City is also growing in the commercial, residential, industrial and public sectors, as evidenced by the increased building permit activity in both commercial and residential structures. Moreover, with the rate of population increase and commercial and industrial development, the land in Southaven is quickly being absorbed, thereby accelerating the City's need for vacant, developable land. The City's path for potential growth is also limited in places by the Tennessee state line and the borders of other cities in DeSoto County.

¶9.    However, the trial court specifically stated in its "Findings of Facts and Conclusions of Law" that the City has no "need for developable land" in the Northeast Parcel because the parcel "is essentially built out." Even though we adopt the chancellor's finding of the fact that the Northeast parcel is "built out," we do not agree with his analysis of this indicium. Under this indicium, we assess the municipality's need to expand, which is independent of

4

the character of the land sought to be annexed. Therefore, we find that the City properly demonstrated its need to expand. Consequently, the indicium favors annexation.

(2)     Path of growth

¶10.    In determining the indicia of reasonableness for the path of growth, this Court has said that a "city need only show that the areas desired to be annexed are in 'a' path of growth [sic] this does not mean that the area is 'the most urgent or even the city's primary path of growth.'" *City of Winona,* 879 So. 2d at 977 (citations omitted). Moreover, this Court has set out a number of factors to be considered, such as: (1) spillover development in annexation area; (2) annexation area immediately adjacent to City; (3) limited area available for expansion; (4) interconnection by transportation corridors; (5) increased urban development in annexation area; (6) geography; and (7) subdivision development. *Id*.

¶11.    This Court, in *Enlargement and Extension of Municipal Boundaries of City of Meridian v. City of Meridian*, 662 So. 2d 597, 612-13 (Miss.1995), also held that the most important factors when determining the path of growth are the adjacency of the proposed annexation area to the city, accessibility of the proposed annexation area by city streets, and spillover of urban development into the proposed annexation area. Here, the chancellor found that, irrespective of the fact that the Northeast parcel "was platted and being developed many years prior to Southaven's extension of its boundaries," spillover growth occurred in that parcel from the State of Tennessee and the cities of Southaven and Olive Branch. Furthermore, he found that the Northeast parcel is immediately adjacent to the City, that the City's subdivision development was "occurring in the direction of each of the [PAA]," and

5

that the Northeast parcel of land is in the path of growth of the City. The substantial credible evidence at the hearing supports the chancellor's finding of reasonableness for this indicum.

¶12. The Northeast parcel is surrounded on three sides by the City and therefore is clearly adjacent to the City. The area is also interconnected to the City by Getwell Rd. on the west, Malone Rd. on the east and Stateline Rd. on the north. Moreover, Watson testified that portions of the annexation areas are accessible only from within the City, specifically Threat Rd. The chancellor also noted that, a drive-through assessment of the area showed evidence of massive subdivision development in Southaven in various stages. All these factors show that the Northeast parcel is in the City's path of growth and thus favor its annexation.

¶13. This Court finds that the chancellor's findings for this indicum were supported by substantial credible evidence and were reasonable. Thus, this factor favors annexation of the Northeast parcel.

(3)     Potential health hazards

¶14. This Court has set out the following factors in determining whether any potential health hazards are reasonable: (1) potential health hazards from sewage and waste disposal; (2) a large number of septic tanks in the area; (3) soil conditions which are not conducive to onsite septic systems; (4) open dumping of garbage; and (5) standing water and sewage. *City of Winona,* 879 So. 2d at 979 (citing *In re Enlargement and Extension of the Boundaries of the City of Macon,* 854 So. 2d 1029, 1038 (Miss. 2003)).

¶15. The Objectors contend that the City does not offer centralized sewer service to the residents of the Northeast parcel, but only offers "pressurized" sewer service on a voluntary basis (i.e., if the residents are willing to pay for it). This implies that, as long as State

6

Department of Health regulations are complied with, the citizens who have septic tanks or individual treatment plants at their homes will be allowed to retain those facilities. Accordingly, they argue that the Court should not consider this indicum in its analysis because, after annexation, there will be no change from the health requirements or conditions that already exist.

¶16.   Based on the experts' reports and the residents' testimonies, the chancellor concluded that there was a definite need for central sewer service in the PAA, given the potential health hazards created by poor maintenance of on site disposal systems by the property owners, odor problems from septic tanks, and the topography, which facilitates backflow of sewage to the City's central sewer system.  He further opined that a pressure system would be available to the residents of the PAA if they were in the City.  After considering the experts' testimonies, the chancellor found that such a system was favorable because: 1) it is cheaper; 2) the installation would be less disruptive than a gravity system; 3) installation would be faster; 4) it would eliminate potential health hazards; and 5) it would allow connections only where needed.

¶17.   This Court finds that the chancellor's findings for this indicum were supported by substantial credible evidence and were reasonable.  Thus, this factor favors annexation of the Northeast parcel.

(4)   <u>Financial ability to provide municipal services</u>

¶18.   This Court has considered the following factors in determining whether there is reasonable financial ability to provide municipal services to the PAA:  (1)  present financial condition of the municipality; (2)  sales tax revenue history; (3)  recent equipment purchases;

7

(4) financial plan and department reports proposed for implementing and fiscally carrying out the annexation; (5) fund balances; (6) the City's bonding capacity; and (7) expected amount of revenue to be received from taxes in the annexed area. *City of Winona,* 879 So. 2d at 981-82.

¶19.    The chancellor found that "the evidence clearly establishes that the City of Southaven has the financial ability to provide the services and make the improvements set out in its ordinance of annexation." He stated several reasons for his conclusions. First, the chancellor gave weight to the testimony of Demery Grubbs, an expert in municipal finance, who found that the City is "more than capable of providing the services" outlined in the financial plan.

¶20.    With regard to fund balances, the chancellor stated:

> Grubbs testified that his firm recommended to municipalities that fund balances be maintained in the 10 to 12 percent range.  The most current audit reflects that Southaven had over a 20% fund balance in the general fund.  The fund balances maintained by Southaven is indicative of the financial ability to provide the services and make the improvements promised.

¶21.    Moreover, the chancellor gave deference to Grubbs's positive  review of the City's sales tax history as well as to Mayor Greg Davis's testimony attesting to the increase in the City's sales tax revenues from $3.5 million to $10 million for the current year. Additionally, retail development in Southaven continues to be strong, evidencing continued sales tax growth.

¶22.    As to recent equipment purchases, the chancellor found that "the proactive nature of the City of Southaven is dynamic evidence of its financial ability to serve the area."  This evidence includes the staffing and equipping of a fire station to serve the Northeast parcel and pumps to provide sewer service for the Northeast parcel.

8

¶23.    Grubbs also testified that the City has "an excellent bonding capacity" with other non-bond financing options available to it as well.  He also maintained that the City's A-plus rating with Standard and Poor's Rating Agency was an excellent indicator of its financial ability.

¶24.    It is within the prerogative of the chancellor to accept or reject the testimony of any witness, to consider all facts not in dispute, and to make his decision accordingly. *In re Extension & Enlarging of Boundaries of the City of Laurel*, 922 So. 2d 791, 798 (Miss. 2006).  This Court finds that the chancellor's findings for this indicium were supported by substantial credible evidence and were reasonable.  Thus, this factor favors annexation of the Northeast parcel.

(5)    Zoning and planning

¶25.    This Court previously has upheld an annexation even when a town had no zoning ordinance and presented no evidence of any urban planning. *City of Winona,* 879 So. 2d at 982 (citing *In re Enlargement and Extension of Corporate Boundaries of the Town of Mantachie,* 685 So. 2d 724, 728 (Miss. 1996)).  Conversely, this Court has upheld an annexation even though a county already had a zoning ordinance. *Id.*  (citing *In re Extension of the Boundaries of City of Ridgeland v. City of Ridgeland,* 651 So. 2d 548, 559 (Miss. 1995)).

¶26.    The chancellor found that this indicium did not favor the annexation of the Northeast parcel because it "is a platted area and also has restrictive or protective covenants which lessens the need for zoning and planning by the City of Southaven."

¶27. In this case, the record clearly demonstrates that DeSoto County has "an excellent zoning ordinance and well organized county planning department." Chris Watson also testified that DeSoto County has had a comprehensive plan since 1958. Therefore, this Court finds that the chancellor's findings for this indicium were supported by substantial credible evidence and were reasonable. Thus, this factor does not favor annexation. This factor alone, however, does not determine whether or not the annexation is reasonable. *In re Enlargement and Extension of Municipal Boundaries of City of Biloxi*, 744 So. 2d 270, 276 (Miss. 1999) (twelve factors "are only indicia of reasonableness, not separate and distinct tests in and of themselves.").

(6)     Municipal services

¶28. In *City of Winona,* this Court said that the factors to be considered in determining whether the need for municipal services is reasonable may include: (1) requests for water and sewage services; (2) plan of the City to provide first response fire protection; (3) adequacy of existing fire protection; (4) plan of the City to provide police protection; (5) plan of the City to provide increased solid waste collection; (6) use of septic tanks in the proposed annexation area; and (7) population density. *City of Winona,* 879 So. 2d at 984. This Court has found that sparsely populated areas have less need for immediate municipal services than densely populated areas. *Id.* (citing *In re Enlargement and Extension of the Boundaries of the City of Macon,* 854 So. 2d 1029, 1041-42 (Miss. 2003)).

¶29. The chancellor determined that the indicium of reasonableness for municipal services favored annexation. He based his conclusion on the fact that "[a]ll the parcels sought to annexed are primarily urban or urbanizing," and consequently, "in need of municipal services

10

or will be in foreseeable future." Substantial credible evidence in the record supports the chancellor's finding of reasonableness for this indicium.

¶30.    The Objectors contend that "while it arguably could be stated that Southaven could provide a higher level of such services, the evidence establishes beyond dispute that such services are adequately provided to the Northeast parcel and that most citizens in that area are adequately satisfied."

¶31.    Mayor Davis testified at the hearing that the fire station had been relocated to serve the Northeast annexation area. As to the ambulance services, the City of Southaven has been providing that service to the PAA even without an interlocal agreement to do so. Moreover, Police Chief Tom Long elucidated Southaven's plan to provide municipal-level police services to the PAA so as to provide "more police presence" in the area. With regard to septic-tank usage in the Northeast area, the Objectors' engineer Danny Rutherford admitted that a need exists in the PAA for a central sewer. With regard to the population density, the Northeast parcel exceeds that of many municipalities around the state, thereby increasing the need for municipal services.

¶32.    Therefore, this Court adopts the chancellor's findings as supported by substantial and credible evidence. As the Northeast parcel develops and grows in population, the need for municipal services will grow, and the City of Southaven is well-equipped to provide them. Thus, this indicium favors the reasonableness of annexation.

(7)    Natural Barriers

¶33.    One of the indicia of reasonableness of a proposed annexation is whether there are any natural barriers between the municipality and the PAA. The chancellor ruled that there are

11

"no natural barriers that would prohibit Southaven from providing the full range of municipal services and facilities to all the areas sought to be annexed." This Court finds that the chancellor's findings for this indicium were supported by substantial credible evidence and were reasonable.

(8)    Past performance

¶34.    The Objectors proffered evidence alleging that the City of Southaven has a record of inadequate past performance in providing services. They gave an example of annexation in 1997 when centralized sewer service was not provided by the City for six to eight years after the annexation. They also pointed out that the City failed to maintain some roads which were overgrown, impassable or unpaved.

¶35.    When comparing what the City promised and what it delivered, the chancellor concluded that Southaven had a record of good past performance. The chancellor considered the commitments in the services and facilities plan adopted as a part of the 1997 annexation and found that the City's failure to provide sewer service, etc. "could be attributed to the vast amount of work that has to be done in a city with a growth rate of Southaven." He further said that "there must be a line of priority," concluding the City kept most of the promises it made in the 1997 annexation plan.

¶36.    This Court has upheld an annexation as reasonable even when the City was unable to provide all services to its present residents. See *In re Extension of the Boundaries of Hattiesburg v. City of Hattiesburg*, 840 So. 2d 69, 89-91 (Miss. 2003). Therefore, the chancellor was correct in concluding that the City's past performance in providing services to the residents and landowners within its existing boundaries supports the reasonableness

12

of the proposed annexation and favors annexation of the Northeast parcel. This Court finds that the chancellor's findings for this indicium were supported by substantial credible evidence and were reasonable.

(9)     Economic or other impact on residents and property owners

¶37.    The Objectors argue that the proposed services they will receive if the PAA is annexed, are already furnished to them by DeSoto County. In addition, the Objectors claim that they will be forced to pay higher ad valorem taxes and that the annexation will cost each homeowner from $1,062 to $1,319 per year. They describe the annexation as nothing more than a "tax grab" or "tax crutch" for the City. Moreover, they contend that the mailing addresses in the Northeast Parcel will change, and this will result in a huge inconvenience to the citizens for several years.

¶38.    The other economic argument the Objectors present concerns the reduction of property values in the Northeast Parcel. First, because property values are higher in Olive Branch than Southaven,[1] the Objectors argue that losing association with Olive Branch will adversely affect property values in the Northeast parcel. Second, they presented the testimony of Jamie Edward Coker, a realtor and real estate broker, stating that the value of the homes in the Northeast parcel will be driven down because, in her opinion, customers prefer gravity centralized sewer system over the pressure sewer system that Southaven is offering.

---

[1]The median home value in Olive Branch is $125,800, while the median home value in Southaven is $91,400.

13

¶39. This Court previously has found that "[t]he mere fact that residents in the PAA will have to pay more taxes is insufficient to defeat annexation." *City of Winona,* 879 So. 2d at 988 (citations omitted). Under this indicium, in *Matter of the Extension of Boundaries of City of Columbus*, 644 So. 2d 1168, 1172 (Miss. 1994), this Court clarified that the reviewing court is required to balance the equities by comparing the City's need to expand and any benefits accruing to residents from the annexation with any adverse impact, economic or otherwise, which probably will be experienced by those who live in and own property in the annexation area. (Citing *Matter of Boundaries of City of Jackson*, 551 So. 2d 861, 867-68 (Miss. 1989)). The mere fact that residents and landowners will have to start paying city property taxes is not sufficient to show unreasonableness. *Id.* at 868.

¶40. Similarly, the Objectors' argument in the case sub judice fails to convince this Court to render the annexation unreasonable. Moreover, this Court finds that the chancellor was correct in ruling that the change in mailing addresses would not be a significant inconvenience.

¶41. As to the argument that property values would decrease in the Northeast parcel, the balancing test as prescribed in *Columbus* is useful here. On one hand, the Northeast parcel will receive fire ratings which will result in lower fire insurance rates, ambulance services, more police protection, central sewer service, as well as other municipal services. On the other hand, the residents may experience increased taxes and a decrease in home values. The chancellor weighed each side and found that this factor weighs in favor of annexation. This Court agrees because the chancellor's findings for this indicium were supported by substantial credible evidence and were reasonable.

14

(10)  Impact on minority voting

¶42.  The impact on minority voting strength was found to be de minimis, as 90.3 percent of the City of Southaven before annexation is white, 6.7 percent is African-American and 3 percent is described as "other."[2]  After annexation, those numbers will shift slightly to the City of Southaven being 90.1 percent white, 7.1 percent African-American and 2.9 percent other, which is a  0.4 percent change.[3]  This Court finds that the chancellor's findings for this indicium were supported by substantial credible evidence and were reasonable.  This factor supports the annexation of the Northeast Parcel.

(11)  Enjoyment of economic and social benefits of the municipality without paying a fair share of taxes

¶43.  Based on the residents' testimony, the chancellor found that "without a doubt . . . . the residents would be in fact enjoying the benefits of proximity of Southaven" in fire ratings, ambulance service, park and recreation service and road access.

¶44.  The Objectors assert that they do not enjoy any benefits from the City without paying for them.  Furthermore, the Summerwood neighborhood has its own park, obviating the need to depend solely on the Southaven park system.  Consequently, the objectors state that they are not "freeloaders."

---

[2]These numbers are obtained from the 2000 census.

[3]This Court does not have before it the racial makeup of the Northeast Parcel.  The entire PAA is 86.2 percent white, 13.1 percent African-American, and .084 percent other.  However, for the purposes of analysis under this indicium, we consider the prior and resultant racial makeup of the City that seeks to annex, not the specific proposed annexation area.  *See **In re Enlarging City of Brookhaven***, 957 So. 2d 382, 386 (Miss. 2007).

15

¶45.  Under our limited standard of review, this Court cannot say that the chancellor abused his discretion correct in finding that this indicium supports the annexation.

(12)    Any other factors that may suggest reasonableness

¶46.  Under this indicium, the Objectors contend that "based upon the telephone conversation between Mayor Davis and Mrs. Stephanie Russell [Vice-President of the Summerwood Neighborhood Association]. . . this annexation was pursued because of the animus that the Southaven Board of Aldermen had against Mr. Sparkman, one of the objectors, and others who were very vocal at City Board Meetings in opposition to this annexation." Therefore, they argue, the annexation is for spite or for an improper or arbitrary reason.[4]

---

[4]The pertinent excerpt from the recorded telephone conversation is as follows:

[Mayor Davis]: I just thought I would call you back. Mr. Sparkman has successfully over the last three of four weeks, agitated enough of my aldermen to where I can't keep Summerwood out of it. So, I was informed after he agitated the last one after this past Tuesday that Summerwood would be part of annexation no matter what. So, I felt like I needed to let you know, since I told you different.

. . . .

[Mayor Davis]: Sorry. And I had no idea, it's different issues with different aldermen [sic], so I – ranging from sewer and water accusations to other stuff. But they just there isn't no way in the world with him out there running his mouth that they aren't going to go after him, and prove him wrong. So, anyway, I felt like I owed you a call.
. . . .

[Stephanie Russell]: Who did he hack off?
[Mayor Davis]: The last one was Greg Guh.
[Stephanie Russell]: Uh, oh.
[Mayor Davis]: So, that made number five, I gave up, I can hold three or four down.
[Stephanie Russell]: He got six, right?
[Mayor Davis]: I can't hold five. Five out of seven is even too much for me to even fight.

16

¶47. The chancellor did not address this issue. This evidence, however, is insufficient to prove that the annexation was arbitrary or for an improper purpose. At most, it reflects one of the Board's considerations in deciding which areas to annex. Moreover, the objectors themselves argue that if they must be annexed, they would prefer to be annexed by Olive Branch. However, this consideration does not cause the annexation by Southaven to be unreasonable.

## CONCLUSION

¶48. Considering a city's burden of proving the reasonableness of a proposed annexation, and because, absent an abuse of discretion, we leave undisturbed a chancellor's finding of reasonableness, this Court affirms the chancellor's judgment approving the petition for annexation.

¶49. **AFFIRMED**.

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR**.