# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-AN-00409-SCT

## CONSOLIDATED WITH:

## NO. 2004-AN-01436-SCT

*IN THE MATTER OF THE ENLARGEMENT AND
EXTENSION OF THE MUNICIPAL
BOUNDARIES OF THE CITY OF CLINTON,
MISSISSIPPI: MYRA JANE HALE, LUCAS L.
HALE, R. MITCHELL HALE AND SUZYN B.
HALE d/b/a HALE FIREWORKS, L.L.C., AND
DAVID WEEKS*

*v.*

*CITY OF CLINTON, MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 02/17/2006 |
| TRIAL JUDGE: | HON. STUART ROBINSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | T. JACKSON LYONS |
| | JOHN R. REEVES |
| ATTORNEYS FOR APPELLEE: | JERRY L. MILLS |
| | KENNETH R. DREHER |
| NATURE OF THE CASE: | CIVIL - MUNICIPAL BOUNDARIES & ANNEXATION |
| DISPOSITION: | AFFIRMED - 05/03/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

**STATEMENT OF THE CASE**

¶1.   This case is an appeal from a chancery court ruling which approved the City of Clinton's annexation of certain parts of land located in Hinds County.  On January 29, 2002, the City of Clinton (the City) filed a petition in the Second Judicial District of the Chancery Court of Hinds County, Mississippi, to approve, ratify, and confirm the enlargement and extension of its municipal boundaries.  The petition proposed three areas to be added to the City.  The extension included property owned by David E. Weeks and the Hale family.  Weeks filed an answer of objectors, pro se, on April 11, 2003.  The Hales also filed an answer of objectors.  The case was heard before the Honorable Stuart Robinson, Jr., on June 7, 2004.

¶2.   The chancellor filed his opinion on June 16, 2004, approving the enlargement and extension of the boundaries of the City of Clinton.   Following the final judgment, Weeks filed a timely appeal to this Court.  The Hales filed a separate appeal.

¶3.   On January 26, 2006, this Court vacated and remanded the annexation, instructing the chancellor to provide detailed reasoning concerning the twelve indicia of reasonableness and enter a new judgment in accordance with the findings.  This Court stated that "we vacate the chancellor's judgment and remand this case with instructions to the chancellor to provide more detailed reasoning on the record as to each indicium of reasonableness and to enter a new judgment in accordance with those findings and conclusions."  *See Weeks v. City of Clinton (In re City of Clinton),* 920 So. 2d 452, 458 (Miss. 2006).  On February 17, 2006, the chancellor entered his findings and conclusions of law, as well as the final judgment approving the annexation to the City.

2

¶4.     Thereafter, Weeks filed a motion for new trial or to reopen the case to take new testimony. The chancellor denied the motion, and Weeks filed this appeal with the Court. The Hales also filed an appeal on March 14, 2006. The two appeals were consolidated.

## STATEMENT OF THE FACTS

¶5.     The City filed a petition for the annexation of three areas in Hinds County into the City of Clinton, located in Hinds County, Mississippi. These three areas that the City petitioned to annex are known as: (1) the North Area, (2) the Southwest Area, and (3) the Southeast Area. Weeks owns property located in the North Area. The Hales own property located in the Southeastern Area.

¶6.     Mayor Rosemary G. Aultman (the Mayor), and Chris Watson, an expert in urban and city planning, testified on behalf of the City in the annexation hearing. The Hales did not attend the hearing. Weeks and fourteen other witnesses attended and testified at the hearing. Weeks cross-examined Watson on whether Watson thought that the proposed annexation area (PAA) residents paid their fair share of taxes and whether the PAA residents' preference to remain outside the City were considered prior to the annexation proceedings. The Mayor was not cross-examined by anyone present at the hearing. No expert testified on behalf of the objectors.

¶7.     The chancellor approved the annexation of all the areas within the PAA and followed his findings of fact and conclusions of law with a final judgment, ruling that the approval of the enlargement and extension of the boundaries of the City of Clinton was reasonable. Weeks and the Hales filed their appeals objecting to the annexation. In their appeals, Weeks and the Hales raise the following issues for review by this Court:

3

I. **Whether the chancellor erred by finding that the City's annexation was reasonable.**

II. **Whether the chancellor erred by failing to support his findings of fact and conclusions of law on the twelve indicia of reasonableness applicable to annexation.**

III. **Whether the chancellor erred by denying Weeks's motion for a new trial.**

IV. **Whether the chancellor erred by approving the annexation since the City cannot acquire the right to consumer water services previously granted to the North Hinds Water Association.**

## DISCUSSION

¶8. This Court set out the standard of review in annexation matters in *In re Extension of Boundaries of City of Hattiesburg*, 840 So. 2d 69, 81 (Miss. 2003). Our Court has limited power in annexation matters, reversing a chancellor's findings as to reasonableness of the annexation only when a "chancellor's decision is manifestly wrong and is not supported by substantial and credible evidence." *Id*. (citing *In re Enlargement and Extension of Mun. Boundaries of City of Madison v. City of Madison*, 650 So. 2d 490, 494 (Miss. 1995)). *See also Basset v. Town of Taylorsville*, 542 So. 2d 918, 921 (Miss. 1989). In *Basset,* we held that:

> Where there is conflicting, credible evidence, we defer to the findings below. Findings of fact made in the context of conflicting, credible evidence may not be disturbed unless this Court can say that from all the evidence that such findings are manifestly wrong, given the weight of the evidence. We may only reverse where the Chancery Court has employed erroneous legal standards or where we are left with a firm and definite conviction that a mistake has been made.

*Basset*, 542 So. 2d at 921. The party seeking the annexation has the burden of proving the reasonableness of the annexation. *Id*.

4

¶9. In the case of ***In re Extension of the Boundaries of City of Ridgeland v. City of Ridgeland***, 651 So. 2d 548, 551 (Miss. 1995) this Court reiterated our long-standing twelve indicia of reasonableness in annexation cases:

> In a series of cases beginning with ***Dodd v. City of Jackson***, 238 Miss. 372, 396-97, 118 So. 2d 319, 330 (1960) down through most recently ***McElhaney v. City of Horn Lake***, 501 So. 2d 401, 403-04, (Miss. 1987) and ***City of Greenville v. Farmers, Inc.***, 513 So. 2d 932, 941 (Miss. 1987), we have recognized at least eight indicia of reasonableness. These include *(1)* the municipality's *need for expansion*, *(2)* whether the area sought to be annexed is reasonably within a *path of growth* of the city, *(3)* the potential *health hazards* from sewage and waste disposal in the annexed areas, *(4)* the municipality's *financial ability* to make the improvements and furnish municipal services promised, *(5)* the need for *zoning and overall planning* in the area, *(6)* the need for *municipal services* in the area sought to be annexed, *(7)* whether there are *natural barriers* between the city and the proposed annexation area, and *(8)* the *past performance* and time element involved in the city's provision of services to its present residents.
>
> Other judicially recognized indicia of reasonableness include *(9)* the impact (economic or otherwise) of the annexation upon those who live in or own property in the area proposed for annexation; ***Western Line [Consol. v. City of Greenville***, 465 So. 2d 1057, 1059 (1985)]; *(10)* the *impact* of the annexation upon the *voting strength of protected minority groups*, ***Enlargement of Boundaries of Yazoo City [v. Yazoo City***, 452 So. 2d 837 at 842-43 (1984) ]; *(11)* whether the property owners and other inhabitants of the areas sought to be annexed have in the past, and for the foreseeable future unless annexed will, because of their reasonable proximity to the corporate limits of the municipality, enjoy the *(economic and social) benefits* of proximity to the municipality *without paying their fair share of the taxes*, ***Texas Gas Transmission Corp. v. City of Greenville***, 242 So. 2d 686, 689 (Miss. 1971); ***Forbes v. Mayor & Board of Alderman of City of Meridian***, 86 Miss. 243, 38 So. 676 (1905); and *(12) any other factors* that may suggest reasonableness vel non. ***Basset v. Town of Taylorsville***, 542 So. 2d 918, 921 (Miss. 1989). ***In the Matter of the Enlargement and Extension of the Municipal Boundaries of the City of Madison, Mississippi: The City of Jackson, Mississippi v. City of Madison***, 650 So. 2d 490 (Miss. 1995) (hereinafter, "*City of Jackson v. City of Madison*")[;] ***In the Matter of the Extension of the Boundaries of the City of Columbus, Mississippi: Kenneth R. Robinson, Walter J. Cunningham, Ralph Edward Hall, J.B. Wilkins, Arnette Neil Beard, and Ed Markham v. City of Columbus, Mississippi***, 644

5

So. 2d 1168 (hereinafter, "*City of Columbus*" ); *City of Jackson*, 551 So. 2d at 864; *See also*, *Basset v. Town of Taylorsville*, 542 So. 2d 918, 921-22 (Miss. 1989).

*City of Ridgeland*, 651 So. 2d at 551 (emphasis added). This Court has held that the twelve factors "are only indicia of reasonableness, not separate and distinct tests in and of themselves." *In re Enlargement and Extension of Mun. Boundaries of City of Biloxi*, 744 So. 2d at 276. In addition, "[t]he chancellor must consider all [twelve] of these factors and determine whether under the totality of the circumstances the annexation is reasonable." *Id*.

## I.     Whether the chancellor erred by finding that the City's annexation was reasonable.

### *The (12) twelve indicia of reasonableness*

### 1. Need to Expand.

¶10.    The objectors argue: (1) that population growth was insignificant and the Mayor relied on figures for the increase in population from 1970; (2) that the Mayor stated that the annexation was to protect the City of Clinton, which is not an indicium of reasonableness; (3) that the Mayor stated that only one tract of land was available for development (however, she did not specify which tract of land was available for development), and the City has enough vacant land within its borders available for development; (4) that Watson stated that the City needed a "cushion" of vacant land for development, yet more than 100 acres were taken in the City's annexation twelve years ago, and no improvements were made; (5) that the Mayor and Watson offered no substantive testimony with regard to the City's internal growth; and that (6) the Mayor and Watson did not address several factors for the need to expand.

6

¶11.   Weeks never cross-examined the Mayor on any of her testimony, including the indicium of the need to expand.  The Hales were not present at the hearing, so they did not cross-examine either the Mayor or Watson.

¶12.   The trial court ruled:

> Mayor Rosemary G. Aultman, Mayor of the City of Clinton, testified that the City of Clinton has clearly demonstrated a need to expand its municipal boundaries.  The City has had planned growth with new development and new subdivisions on the north side.  Residents in these areas have sought city services from Clinton.  Further, Clinton's population has almost tripled in the past thirty (30) years.  Mayor Aultman further testified that there was only one (1) tract of land left within the municipal boundaries that was large enough to support more development.  Although other tracts exist, these tracts are located in flood plains and so are almost impossible to properly develop.  Developers seek new tracts large enough to support more development within the boundaries of the City of Clinton.  Chris Watson, a city planner with Bridge and Slaughter, and an expert in the field of urban and regional planning, testified that the City is desperately in need of vacant land.  Mr. Watson stated that without annexation, Clinton would be unable to develop further commercially as there is not sufficient vacant land to develop.  Mr. Watson further testified that Clinton is a city of nearly 1,000 persons per square mile and as such has reached density capacity.  The City has experienced growth internally as well as growth along its borders.
>
> Clinton has issued building permits which would total an additional 1,272 living units in the past eight years.  Currently, Clinton issues more building permits in a year than the [capitol, the] City of Jackson.
>
> The City of Clinton has further demonstrated its need to expand based on the limited expansion areas surrounding the current city.  Clinton is blocked by most sides from expanding its borders due to existing municipalities, such as the City of Jackson and the City of Bolton.  Clinton seeks to expand its borders so that it can exercise control over the developments that are springing up to the north and to provide comprehensive planning for growth.
>
> Mayor Aultman also testified regarding the increased transportation routes in and around the City of Clinton which have helped to fuel growth of the City.  The City has recently constructed additional parkways and roads to facilitate the growth of the City.

7

The Mississippi Supreme Court, in concluding that the City of Ridgeland had a need to expand, relied on supporting evidence which included expert testimony on increased new building permit activity, lack of available land to meet increasing development and the need to expand Ridgeland's borders so that it could exercise control over development and provide comprehensive planning for growth. *Extension of Boundaries of City of Ridgeland*, 651 So. 2d 548, 553-56 (Miss. 1995) (hereinafter, "*Ridgeland*"). The court in *Extension of Boundaries of City of Hattiesburg*, 840 So. 2d 69, 84 (Miss. 2003) (hereinafter "*Hattiesburg*"), found that the PAA had been "developing without city entanglements and lacked general planning." The court notes that "haphazard growth, the lack of infrastructure, and the lack of building codes [was] not in the best interest of future owners and residents of the area." *Id*.

In the *City of Jackson v. City of Ridgeland*, 551 So. 2d 861, 865 (Miss. 1989) (hereafter, "*Jackson*"), the court found that Jackson had a need to expand principally because it did not need to have another 4.3 mile stretch of its corporation limits blocked in by another city. In the case at hand, the City of Clinton needs to expand in order to preserve its growth corridors.

The chancellor then cited the twelve factors outlined in *City of Winona* to determine whether a municipality has a need for expansion.

¶13. In the case of *In the Matter of the Enlargement and Extension of the Boundaries of the City of Macon v. City of Macon*, 854 So. 2d 1029, 1035 (Miss. 2003), the Court listed numerous factors to consider when determining whether a city has a reasonable need for expansion. When determining this indicium of reasonableness, the following factors considered by the chancellor may but do not have to include:

(1) spillover development into the proposed annexation area; (2) the City's internal growth; (3) the City's population growth; (4) the City's need for development land; (5) the need for planning in the annexation area; (6) increased traffic counts; (7) the need to maintain and expand the City's tax base; (8) limitations due to geography and surrounding cities; (9) remaining vacant land within the municipality; (10) environmental influences; (11) the city's need to exercise control over the proposed annexation area; and (12) increased new building permit activity. *In re Enlargement and Extension of Mun. Boundaries of City of Biloxi*, 744 So. 2d at 279; *Matter of Enlargement and Extension of the Mun. Boundaries of the City of Jackson*, 691 So. 2d

8

978, 980 (Miss. 1997); *Extension of Boundaries of City of Ridgeland v. City of Ridgeland*, 651 So. 2d 548, 552 (Miss. 1995); *Matter of Extension of Boundaries of City of Columbus*, 644 So. 2d 1168, 1173 (Miss. 1994).

*Id*. This Court has held that it has "declined to set an absolute amount of usable vacant land that would prevent annexation." *In the Matter of the Extension of the Boundaries of the City of Hattiesburg*, 840 So. 2d at 85. Indeed, annexation in various cities such as "Southaven, Madison, and Ridgeland, which had usable vacant land of 43%, 59%, and 48%, respectively" were approved by this Court. *Id*. *See also Extension of Boundaries of City of Ridgeland*, 651 So. 2d at 554-56; *Enlargement and Extension of Mun. Boundaries of City of Madison*, 650 So. 2d at 496; *City of Southaven v. City of Lake Horn (In re City of Horn Lake)*, 630 So. 2d 10, 18 (Miss. 1993). The above case law indicates that this Court refuses to set a limit on the vacant land available and has approved annexations when there has been as much as 59% usable vacant land available to an area. In addition, the evidence and testimony below revealed that the City met a number of the factors referenced in *In re Extension of Boundaries of City of Winona*, 879 So. 2d at 974, to meet the need to expand.

¶14. The Mayor testified about the City's need to expand and to a number of the factors supporting this indicium of reasonableness. The Mayor stated that the City had growth, especially on the north side of town. The Mayor also said that the City tripled in population growth from 1970 to the 2000 U.S. Census. Weeks challenges the accuracy of this population increase. Watson clarified the population information by stating that the population in the City was "very dense" and had about 1,000 persons per square mile, which was dense for a southern municipality. Along with the dense population, Watson stated that there was additional development in the City including frequent issuance of building permits

9

from 1996 to 2004. He said these permits indicated that the density was not decreasing or stagnant. In Watson's opinion, the increase in density indicates that the City was ripe for annexation.

¶15. Weeks argues that the "protection" of a city is not an indicium of reasonableness. It is true that "protection" is not listed as one of the eleven factors that may be considered when assessing the need to expand. *In re Extension of Boundaries of City of Winona*, 879 So. 2d at 974. However, contrary to Weeks's assertions that the Mayor provided no reason for a need to "protect" the City, she stated that one of the reasons for expansion was the need to protect the City's borders so that the type of development that occurs is compatible with urban or municipal development. This reasoning directly relates to two factors, the need for planning in the PAA and the need to exercise control over the proposed annexation area.

¶16. The Mayor also stated that one tract of land within the City limits was large enough for development. Weeks and Hales take issue with the Mayor for not identifying this tract of land in her testimony. Weeks also asserts that more than 100 acres from a previous annexation have not been used by the City. However, the fact that vacant land remains in a city does not necessarily defeat annexation. *In the Matter of the Extension of the Boundaries of the City of Hattiesburg*, 840 So. 2d at 85; *Extension of Boundaries of City of Ridgeland*, 651 So. 2d at 554-56; *Enlargement and Extension of Mun. Boundaries of City of Madison*, 650 So. 2d at 496; *In re City of Horn Lake*, 630 So. 2d at 18. Furthermore, Watson explained that just because there was vacant land in the City, development would not necessarily occur, especially if a landowner did not want to develop his or her land.

10

¶17. Watson stated that the City had a number of reasons for a need to expand, which included the need for vacant land. He said that the less vacant land there is in a city's limits, the more vacant land is required in the annexation area. Therefore, a city needs a "cushion" of vacant land. However, a city needs to annex enough land so that it does not have to undertake frequent annexations.

¶18. Weeks also asserts that neither the Mayor nor Watson gave substantive testimony in regard to the City's internal growth. The Mayor also stated that there was internal growth and growth along the City borders. While the Mayor and Watson did not elaborate on this factor, Watson's testimony in particular indicated that the City had an enormous amount of internal growth, prompting the annexation. Watson testified that the City was "very dense" in population. In addition, the City issued 1,272 building permits between 1996 and 2004. These permits indicated that the City was growing and not stagnant. Watson also compared the number of building permits issued to the City with the number issued by the City of Jackson. Even though the City had a population of approximately 24,000, and Jackson had population of approximately 180,000, the City issued more residential permits in 2001 than Jackson. Watson relied on census figures for his comparison.

¶19. Furthermore, Watson conducted a more extensive study on building permits. He explained that an increase in building permits had an impact on density and land absorption. He showed evidence of 1,272 residential building permits issued from 1996 through 2004. Watson testified that this increase in living units occupied the vacant land in the City or absorbed the small amount of vacant land left in the City. The number of building permits,

11

according to Watson, demonstrated significant growth and a need to expand. Watson also stated that in his opinion the City had an immediate need for expansion.

¶20. Weeks asserts that the Mayor and Watson did not address several factors for the need to expand. Mississippi case law does not require that every factor under the indicium of reasonableness for the need to expand must be addressed by a chancellor. In ***In the Matter of the Enlargement and Extension of the Boundaries of the City of Macon***, 854 So. 2d at 1034, this Court listed eleven factors that ***may be considered*** when determining whether a City has a reasonable need for expansion. *See also* ***In re Extension of Boundaries of City of Winona***, 879 So. 2d at 974 ( the indicium of reasonableness for the need to expand "may but do not have to include" the listed eleven factors). Here, the testimony from the Mayor and Watson made no mention of three factors: increased traffic counts, the need to maintain and expand the City's tax base, and environmental factors. Nevertheless, all eleven factors are not necessary for this indicium; rather these factors act as a guide to assessing whether this indicium is met by a city.

¶21. The Hales assert that the chancellor misstated some of his findings on this indicium. More specifically, the Hales take issue with the chancellor's findings that the City was in "desperate" need of vacant land and the City had reached population "capacity." The Mayor stated that one tract of vacant land was available in the City. Watson stated that a "cushion" of vacant land was needed, and that the area was "very dense." Given the testimony from the Mayor and Watson above, the overall testimony concerning the need to expand satisfies this indicium of reasonableness.

¶22. We find that the chancellor's findings for this indicium were supported by substantial credible evidence and were reasonable.

## 2. Path of Growth.

¶23. Weeks does not address this indicium in his brief. The Hales argue: (1) the only "spillover" growth with urban development and roads in the PAA was in the Pinehaven Road area; (2) there is no evidence in the record concerning the number of people living in the PAA who once lived in the City; and (3) there is no evidence of the amount of land available for development other than the Mayor and Watson's unquantified and conclusory testimony.

¶24. The chancellor stated:

Mayor Aultman testified that the proposed annexation area is directly in Clinton's path of growth. Clinton has grown in an outward fashion and therefore its path of growth will continue to follow in an outward direction where it is not limited by existing cities or natural barriers. The proposed annexation areas extend the boundaries of the City of Clinton in such an outward direction. All of the proposed annexation area is immediately adjacent to the City of Clinton, accessible by in-use public streets, and included in the Clinton School District. The City of Clinton also has spillover development occurring on the fringes of the city, including the proposed annexation areas, an indication that Clinton will continue to follow this path of growth in order to maintain its tax base and to serve the residents of these areas. Many of the residents of the proposed annexation area were once residences of Clinton who have moved to build new larger homes or to buy larger parcels of property that are no longer available within the City boundaries.

In *Meridian*, the Mississippi Supreme Court found that the proposed annexation area was within Meridian's path of growth based on evidence that the proposed annexation area was immediately adjacent to Meridian, was accessible by in-use public streets, highways and roads, was experiencing spillover of urban development from Meridian, and had a community of interest with Meridian. 662 So. 2d at 612-13. The *Winona* court also outlined several factors to consider in determining whether a proposed annexation area is within a municipality's path of growth: (1) spillover development in annexation area; (2) the adjacency of the proposed annexation area to the city;

13

(3) limited area available for expansion; (4) interconnection by transportation corridors; (5) increased urban development in annexation area; (6) geography; and (7) subdivision development. *Winona*, 879 So. 2d at 977. All of these factors are present here. The Court finds that the PAA is in Clinton's path of growth.

¶25. When considering the indicia of reasonableness for the path of growth, a city need only show that the areas desired to be annexed are in "a" path of growth. This does not mean that the area is "the most urgent or even the city's primary path of growth." *In the Matter of the Extension of the Boundaries of the City of Hattiesburg*, 840 So. 2d at 86-87 (quoting *City of Jackson*, 551 So. 2d at 865). *See also In re City of Horn Lake*, 630 So. 2d at 18.

¶26. This Court has held:

> The test for evaluating the reasonableness of a chosen path of growth is "whether an area is in a path of growth, not necessarily a City's primary path of growth." *In re City of Horn Lake*, 630 So. 2d 10, 19 (Miss. 1993). This Court has further stated that "our law gives municipalities the discretion, based on convenience and necessity, to choose between various paths of growth by annexation." *Ritchie v. City of Brookhaven*, 217 Miss. 860, 65 So. 2d 436, 439 (1953). The law is clear that the annexation area must be in "a" path of growth not "the" path or "only" path of growth.

*City of Macon*, 854 So. 2d at 1029.

¶27. This Court has further set out a number of factors to consider whether the path of growth is reasonable. These may or may not include:

> (1) spillover development in annexation area; (2) annexation area immediately adjacent to City; (3) limited area available for expansion; (4) interconnection by transportation corridors; (5) increased urban development in annexation area; (6) geography; and (7) subdivision development. *In re Extension and Enlargement of the Mun. Boundaries of the City of Biloxi*, 744 So. 2d at 280; *Enlargement and Extension of Mun. Boundaries of City of Madison v. City of Madison*, 650 So. 2d 490, 497 (Miss. 1995); *Extension of Boundaries of City of Ridgeland*, 651 So. 2d at 556. This Court in *Enlargement and Extension of Mun. Boundaries of City of Meridian v. City of Meridian*, 662 So. 2d 597, 612-13 (Miss. 1995), held that the most important factors when

14

determining the reasonableness of path of growth are the adjacency of the proposed annexation area to the City, accessibility of the proposed annexation area by City streets, and spillover of urban development into the proposed annexation area.

*City of Macon*, 854 So. 2d at 1037.

¶28. The chancellor found that the PAA was in the path of growth. He found that there was spillover growth on the fringes of the City which included the PAA. The chancellor also found that all of the proposed annexation area was immediately adjacent to the City of Clinton, and it was accessible by in-use public streets. The testimony and evidence at the hearing supports the chancellor's finding of reasonableness for this indicium, and it was supported by substantial credible evidence.

¶29. In Watson's opinion, the PAA lies within the path of growth of the City. Watson initially used an area map from 1999. However, a month prior to the hearing, he drove around the area and noted a number of places where growth, mainly in the form of new housing, had occurred since 1999. The data from the U.S. Census Bureau indicated that there was a significant population increase from 1,100 people in 1990 to 1,653 in 2000 in the PAA. There was also an increase in dwelling units from 391 dwellings in 1990 to 560 dwelling units in 2000. Watson stated that transportation development likely will increase in the area and that many of the transportation corridors radiate from the City. In addition, Watson stated that spillover growth occurred in all three areas of the PAA. Specifically, Watson said the area north of the City has spillover growth. However, he also found spillover growth in the other areas, stating "[a]nd although I've referenced in my testimony the north area, this [spillover growth] also applied to the south area and the west area also." Watson found the

15

PAA to be contiguous and immediately adjacent to the City. Watson also stated that the City had certain restrictions on its path of growth to the east because of its proximity to the City of Jackson. However, Watson said that the path of growth remained open to the City to the southwest and north of the City.

¶30. The Mayor testified that the City has developed transportation corridors of transportation that fueled the City's growth. The Mayor also pointed out the main transportation roads, such as Clinton Parkway, the Norrell interchange, and the then-upcoming 2005 completion of the Natchez Trace Parkway connecting to the Madison area.

¶31. The Mayor also showed on the map that the City was landlocked to the east by the City of Jackson. The City of Bolton is also near the City, therefore, the Mayor testified that the most logical and economically feasible areas for a proposed annexation area were north, northwest, and south of the City. All three of the PAAs are immediately adjacent to the City, and all the areas are included in the Clinton School District.

¶32. The Hales argue that the only spillover growth was in the Pinehaven area. As for spillover growth, the Mayor stated that the primary growth had been along the Pinehaven Road area. The Mayor stated that most of the new growth occurred in the area north of the City. In addition, the Mayor stated that the City's land to the southeast had been built out, and the City's land to the southwest had some, but not much, developable land. Watson also testified that there was spillover growth in all three areas of the PAA.

¶33. Clearly, the testimony and the reference to the 1999 land use map show that there was spillover growth and that the southern area of the PAA had a large amount of development. The Hales also argue that there is no evidence in the record concerning the number of people

16

living in the PAA who once lived in the City. (The Mayor stated that a number of people who once lived in the City had moved to the PAA areas.) No data supported the Mayor's assertion, however this statement does not mean that the City failed to demonstrate the indicium of reasonableness for the path of growth. The Mayor's and Watson's testimony adequately covered the factors for this indicium. In addition, the Hales claim that there is no evidence of the amount of land available for development other than the Mayor and Watson's unquantified and conclusory testimony. This issue was discussed in the need to expand indicium of reasonableness and will not be addressed again.

¶34. We find that the chancellor's findings for this indicium were supported by substantial credible evidence and were reasonable.

### 3. Health Hazards.

¶35. Weeks and the Hales argue that the City failed to articulate any potential health hazards from sewage or waste disposal in the PAA. They maintain that Watson made generalizations of this indicium without identifying any specific area in the PAA that had any potential health hazards such as ineffective sewage systems or poor drainage resulting in standing water. The Hales argue that services from central sewage systems and treatment facilities would not be provided to PAA residents until some time in the future, in Phase II of the water project.

¶36. The chancellor stated, in part:

> Mayor Aultman testified that the current water lines to the proposed annexation area are inadequate for the type of fire equipment used by the City. The City will install new water lines for fire protection. Clearly, this is a potential health hazard that will be corrected by actions taken after the annexation.

17

Further, Chris Watson testified that the overwhelming majority of the soil types within Hinds County, and specifically the proposed annexation area, are not conducive to accommodate a septic tank. The soil is of such type that the effluent from a septic tank is not properly filtered out. Clearly, this represents a serious potential health hazard to the residents of the proposed annexation area. The City of Clinton has developed a Sanitary Sewer Improvements Plan that will provide proposed sewer extensions and improvements to the proposed annexation area.

¶37. This Court has further set out a number of factors to consider when determining if potential health hazards are reasonable. These may or may not include:

> (1) potential health hazards from sewage and waste disposal; (2) a large number of septic tanks in the area; (3) soil conditions which are not conducive to on-site septic systems; (4) open dumping of garbage; and (5) standing water and sewage. *In re Extension and Enlargement of the Mun. Boundaries of the City of Biloxi*, 744 So. 2d at 280; *In re Extension of Corporate Boundaries of the Town of Mantachie*, 685 So. 2d 724, 727 (Miss. 1996); *Extension of the Boundaries of City of Ridgeland*, 651 So. 2d at 558; *City of Horn Lake*, 630 So. 2d at 18; *In re Matter of the Extension of the Boundaries of the City of Jackson*, 551 So. 2d at 866; *City of Greenville*, 513 So. 2d at 935.

*City of Macon*, 854 So. 2d at 1038.

¶38. The chancellor found that the PAA has potential health hazard problems. Substantial credible evidence at the hearing supports the chancellor's finding of reasonableness for this indicium.

¶39. Specifically, Watson was questioned about his examination of the PAA with regard to the potential for health hazards. Counsel for the City stated:

> And with regard to the next indicia of reasonableness, whether there are existing potential health hazards *within the area sought to be annexed*, did you make an examination of the issue in making your recommendations to the Mayor and the Board of Aldermen of the City of Clinton?

18

(Emphasis added). Watson stated that he conducted an examination of the potential health hazards in the PAA. Watson found that the soil survey showed that the majority of soil in Hinds County was not conducive to septic tanks. Therefore, the effluent would not properly percolate and filter through this soil, creating a potential health hazard. In addition, larger lot sizes would be required to accommodate on-site sewage disposal systems. Larger lot sizes also leads to a reduction of efficiency of services and would have an economic impact, since it would be more costly to provide services to larger, lower density lots. Watson and the City prepared a sanitary sewer improvement plan for the PAA. However, Watson also stated that if a citizen does not receive sewer services, then that person will not pay for the service.

¶40. We find that the chancellor's findings for this indicium were supported by substantial credible evidence and were reasonable.

### 4. Financial ability to provide municipal services.

¶41. Weeks does not address this indicium of reasonableness in his brief. The Hales concede that the City was in good financial condition at the time of the hearing. However, the Hales question whether three years after the hearing, the financial condition still remains the same.

¶42. The chancellor stated:

> The City of Clinton is in excellent financial condition, Mayor Aultman testified that the City budgeted very conservatively and had a stable economy. In 2004, the City's projections indicated a receipt of about three and a half million dollars in sales tax. Further, real property valuations increased approximately 58% in a period of about eight years. A feasibility study prepared for the City indicate[s] that the City is fully capable of providing for the costs in Phase 1 and Phase 2 in terms of water and sewer and additional personnel and all associated costs. Further, the City had reached its bonding capacity between thirteen (13) and fifteen (15) million dollars. The City also

19

projects a year-end fund balance of over two (2) million dollars. Clearly, the City of Clinton had the financial ability to implement the annexation in a timely manner without burdening the existing taxpayers of the City.

¶43. The chancellor then considered the seven factors to determine if a municipality had the financial ability to annex certain territory, set forth in *In re Extension of Boundaries of City of Winona*, and concluded that the City had demonstrated financial feasibility. The chancellor also stated "Clinton will remain in financially healthy shape and, based on projections over the next five years, expenses of the PAA will not exceed revenues."

¶44. The factors to consider regarding reasonable financial ability for the annexation may or may not include:

> (1) present financial condition of the municipality; (2) sales tax revenue history; (3) recent equipment purchases; (4) the financial plan and department reports proposed for implementing and fiscally carrying out the annexation; (5) fund balances; (6) the City's bonding capacity; and (7) expected amount of revenue to be received from taxes in the annexed area. *Town of Mantachie*, 685 So. 2d at 728; *City of Meridian*, 662 So. 2d at 611; *Extension of Boundaries of City of Ridgeland*, 651 So. 2d at 558; *City of Columbus*, 644 So. 2d at 1171; *City of Greenville v. Farmers, Inc.*, 513 So. 2d at 935; *In re Extension of Boundaries of City of Ridgeland*, 388 So. 2d 152, 156 (Miss.1980); *In re Extension and Enlargement of the Mun. Boundaries of the City of Biloxi*, 361 So. 2d at 1374; *Bridges v. City of Biloxi*, 253 Miss. 812, 178 So. 2d 683, 685 (1965); *In re City of Gulfport*, 253 Miss. 738, 179 So. 2d 3, 6 (1965).

*City of Macon*, 854 So. 2d at 1039-40.

¶45. We find that the chancellor's findings for this indicium were supported by substantial credible evidence and were reasonable.

**5. Zoning and planning.**

¶46. Weeks did not address this indicium of reasonableness in his brief. The Hales argue that the Mayor had a conclusory opinion of the comparative benefits of the City's zoning

20

ordinances relative to Jackson's ordinances. The Hales also argue that there was no testimony at the hearing of any developer's plan in the PAA, even though the chancellor stated that "[t]he City is aware that some large tracts of land in the proposed annexation area are going to be developed over a period of time."

¶47.   The chancellor stated:

> The City of Clinton has demonstrated that there is a need for zoning and overall planning in the proposed annexation area. Mayor Aultman testified that the proposed annexation area is currently under the broad zoning regulations of Hinds County. The City is aware that some large tracts of land in the proposed annexation area are going to be developed over a period of time. The City zoning ordinances are much more specific than the broad zoning regulations of Hinds County. The undeveloped areas in that area are in need of municipal-level codes and regulations to ensure the compatibility of land uses. Such compatibility will ensure the protection of the residents and property owners of both the proposed annexation areas and the current City of Clinton. Public safety is the primary objective of zoning in these areas.

¶48.   This Court has upheld an annexation even when a town had no zoning ordinance and presented no evidence of any urban planning. *In re Enlargement and Extension of Corporate Boundaries of the Town of Mantachie,* 685 So. 2d 724, 728 (Miss. 1996). On the other hand, this Court has upheld an annexation where a county already had a zoning ordinance. *Extension of Boundaries of City of Ridgeland*, 651 So. 2d at 559.

¶49.    The Mayor testified that the PAA had a need for zoning and planning. While Hinds County had zoning, the Mayor stated that it was very broad and covered a larger area. When questioned, the Mayor agreed that the ordinances in the City were more specific than the ordinances in Hinds County. However, the Mayor stated that PAA was growing and developing into an urban area; therefore, the area should be compatible with the City. In

21

addition, the Mayor stated that, generally, property values increase in areas where there is good zoning.

¶50.    Watson stated that the PAA was an area that was in transition and urbanizing. Generally, the land use controls of Hinds County are considered under this indicium. Watson stated that since much of Hinds County was rural, the ordinances were geared toward rural zoning. In addition, Watson said that it would be difficult for county ordinances to be geared toward rural and urban areas because these concepts were two extremes. Watson stated that the City's land use controls were more suitable to the type of urban development that has occurred in the PAA.

¶51.    The Hales argue that the Mayor made conclusory statements concerning the comparative benefits of the City's zoning ordinances relative to Jackson's ordinances. Of course, the Hales did not attend the annexation hearing and therefore, failed to cross-examine the Mayor on this issue. The Mayor testified that Hinds County's ordinances were broad, and the City's ordinances were more specific than the County's. Watson's testimony also supported the Mayor's testimony. Watson stated that, in annexations, it was common to look to a county's land use ordinances. He stated that Hinds County's land use ordinances were geared toward rural ordinances since much of Hinds County was rural land. However, Watson stated that the PAA had more urban development; therefore, the City's ordinances were better for the PAA.

¶52.    The Hales also take issue with the chancellor's findings that "[t]he City is aware that some large tracts of land in the proposed annexation area are going to be developed over a period of time." The Hales contend that there was no testimony regarding any developer's

22

plan for the area. Again, the Hales were not present at the annexation hearing and did not cross-examine the Mayor on this issue. Weeks, who attended the hearing, did not cross-examine the Mayor on anything. A known, planned development is not necessary. However, the Mayor and Watson previously testified that they expected, based on the spillover growth and general growth in the area, that the PAA would be developed more fully over time. This statement by the chancellor was reasonable when all the testimony on the growth of the area is considered.

¶53. We find that the chancellor's findings for this indicium were supported by substantial credible evidence and were reasonable.

### 6. Municipal services.

¶54. Weeks argues that the City failed to show a need for municipal services, because there had no plan for fire protection or solid waste collection. The Hales concede that some of the municipal services provided by the City would benefit the PAA residents. However, the Hales contend that these services would be an improvement for any rural Mississippi community. Both Weeks and the Hales argue that many of the objectors claim to be satisfied with Hinds County services.

¶55. The chancellor stated:

> The City of Clinton has demonstrated a need for municipal services in the proposed annexation area and Clinton has demonstrated the ability and commitment to provide such services. Currently, the proposed annexation area is served by a volunteer fire department. The annexation of these areas by the City of Clinton will provide residents with improved fire protection and thus reduce homeowner's insurance premiums due to the City's Class 5 fire rating, The Fire Department also provides emergency medical services. Moreover, the citizens in the proposed annexation area will enjoy municipal level police

23

protection through a beat patrol offered by the City of Clinton's police department. Further, the residents of this area will enjoy garbage collection.

In *Madison*, the court found that the PAA needed municipal services based on testimony from the mayor that Madison could provide quicker police response than the country, additional police protection, higher level fire protection, overall planning, and garbage pickup. 650 So. 2d at 501-02; *see also Hattiesburg*, 840 So. 2d at 89-90. The same factors are present here. When Clinton extends its police and fire protection, zoning and planning, parks, and adequate public works services, the PAA will receive much needed improvement in municipal services. This indicium of reasonableness is met.

¶56. Factors to consider on whether the need for municipal services is reasonable may or may not include:

(1) requests for water and sewage services; (2) plan of the City to provide first response fire protection; (3) adequacy of existing fire protection; (4) plan of the City to provide police protection; (5) plan of City to provide increased solid waste collection; (6) use of septic tanks in the proposed annexation area; and (7) population density. *Enlargement and Extension of the Mun. Boundaries of City of Madison*, 650 So. 2d 490, 502 (Miss. 1995); *Extension of Boundaries of City of Ridgeland,* 651 So. 2d at 559; *City of Horn Lake*, 630 So. 2d 10, 21 (Miss. 1993).

*City of Macon*, 854 So. 2d at 1041-42. In sparsely populated areas, this Court has found that "there is less of a need for immediate municipal services" than in densely populated areas. *Id*. (citing *In re Matter of the Extension of the Boundaries of the City of Jackson*, 551 So. 2d at 867).

¶57. The Mayor testified that many of the residents, particularly in the northern portion of the PAA, requested municipal services. The residents of the PAA would receive services such as police, fire, and garbage services. The Mayor said that the City would need to hire four new policemen to meet the needs of the new residents, but the fire department had enough personnel. However, the City's fire equipment would have to shift somewhat in

24

various stations to meet the needs of the new residents. Further, the PAA residents had a Class 10 fire rating, the lowest possible rating. The City had a Class 5 fire rating. By providing municipal fire protection to the PAA, the insurance premiums paid by the PAA residents would be reduced by a significant amount. The Mayor stated that a study showed the reduction in the fire insurance premiums paid by the PAA residents would be almost equivalent to any increase in property taxes paid to the City. Further, the City's annexation plan proposed water services, in part, to have increased water flow in the event of a fire. In the meantime, the City had pumpers and tankers to bring water to an area in the event of a fire.

¶58. Watson stated that many street signs in the PAA have gunshots holes in them, demonstrating that the PAA needs more police protection. Watson also noted that Norrell Road appeared to have been used as a drag racing strip. Further, Watson testified to the lower fire rating that the City maintained in comparison to the PAA. Watson described the PAA as growing and having an urban level density, therefore, in his opinion, the PAA needs the additional police and fire protection.

¶59. Weeks claims that the chancellor erred in finding annexation favored this factor, because the municipal services are adequate. As the testimony showed, some of the residents of the PAA requested municipal services and the City had proposed police and fire protection plans. The residents in the PAA would benefit from increased police and fire protection, due to the area's a high urban density. Further, by being annexed into the City, the residents of the PAA would benefit from an improved fire rating. Previous testimony also demonstrated that the City had a water and sewer service plan for the PAA because the PAA's soil was not

25

conducive to septic tank systems. We find that the chancellor's findings for this indicium were supported by substantial credible evidence and were reasonable.

### 7. Natural barriers.

¶60. The chancellor ruled:

> The annexation area is contiguous to the City of Clinton with unimpeded access into and out of the areas from the City. This Court finds that there are no natural barriers that would make it prohibitive for the City of Clinton to complete its infrastructure investment, including water and sewer services, to either of the two proposed annexation areas.

Weeks's brief fails to address this issue. The Hales admit that the chancellor was correct in finding no natural barriers, other than possibly Interstate 20, that would impede the improvements. Accordingly, this Court need not address this issue on appeal.

### 8. Past performance.

¶61. Weeks and the Hales contend that the Mayor did not specify when the services could start in the PAA. Weeks cited to the testimony of many current City residents who still have no services or who were not satisfied with current services. The Hales also contend that the Mayor did not specify the percentage of City residents who receive City services.

¶62. The chancellor stated:

> In 1984-85, the City annexed a large portion of property. In 1995, the City annexed a very small area of approximately twenty-five (25) homes. In both instances, the City of Clinton has provided the promised municipal services quickly and effectively.

¶63. This Court upheld an annexation in *City of Hattiesburg*, 840 So. 2d 69, although the Court found that the City had failed to provide municipal services for some areas of the City for more than eighteen years. Likewise, in *In re Extension of Boundaries of City of*

*Winona*, 879 So. 2d at 987, this Court upheld the annexation and found the "past performance" indicium of reasonableness to have substantial credible evidence even though the "City's prior annexation promises did not provide for full services to all areas of the annexed area."

¶64. The Mayor stated that in the past two annexations, in 1984-85 and 1995, the City met its responsibilities and obligations for services to residents where it was economically feasible to do so. The City's plan to provide the services was divided into two phases. Phase 1 of the plan would provide services in the first five years to new residents in the heavy density areas and Phase 2 would provide services in the next five years to new residents in more of the outlying areas. The Mayor stated that the City's plan outlines the responsibilities of the City to the PAA residents, and the City intended to follow that plan. Watson stated that the City met its burden of past performance.

¶65. We find that the chancellor's findings for this indicium were supported by substantial credible evidence and were reasonable.

**9. Economic or other impact on residents and property owners.**

¶66. Weeks argued that the chancellor's findings in favor of this indicium were erroneous. He questioned whether City taxes would provide PAA residents with something of value for their tax dollars. Weeks cited his and other objectors' testimony concerning the impact of having to pay City taxes on their property. The Hales were concerned with the chancellor's statements that a large portion of the PAA residents favor annexation.

¶67. The chancellor stated:

27

As previously described, the citizens of the PAA, upon becoming part of the City of Clinton, will enjoy comprehensive planning, economic development, housing and community development, code enforcement, and zoning and subdivision regulations as administered by the Department of Planning and Development. The PAA will also experience the increased protection of life and property that comes as a benefit of twenty-four hour municipal level police and fire protection.

Residents and business owners in the PAA will experience several economic benefits after becoming part of Clinton. Homeowner's insurance rates will drop significantly due to an improvement in ratings.

Further, it is important to note that a large majority of the residents of the proposed annexation area not only do not oppose annexation, but have actively sought to be annexed by the City of Clinton.

In *Hattiesburg*, 840 So. 2d at 82, the court ruled that, in determining whether a proposed annexation is reasonable, emphasis should be placed on whether residents in the annexed area will receive anything of value in exchange for their tax dollars. Evidence has shown that when Clinton annexes its PAAs, the residents will enjoy numerous benefits in exchange for their tax dollars.

¶68.    "[T]he mere fact that residents in the PAA will have to pay more taxes is insufficient to defeat annexation." *City of Hattiesburg*, 840 So. 2d at 93 (quoting *In re Enlargement and Extension of Mun. Boundaries of the City of Biloxi*, 744 So. 2d 270, 284 (Miss. 1999)); *In re City of Horn Lake,* 630 So. 2d at 23-24. This Court has held:

[T]he Court is required to balance the equities by comparing the City's need to expand and any benefits accruing to residents from the annexation with any adverse impact, economic or otherwise, which will probably be experienced by those who live in and own property in the annexation area. The mere fact that residents and landowners will have to start paying city property taxes is not sufficient to show unreasonableness. *Jackson*, 551 So. 2d at 867-8.

*Matter of the Extension of Boundaries of City of Columbus*, 644 So. 2d 1168, 1172 (Miss. 1994); *see also In re City of Horn Lake,* 630 So. 2d at 23-24 (quoting *Matter of Boundaries of City of Jackson*, 551 So. 2d at 867-68). In *Columbus,* this Court further held that "as

28

equity and reasonableness are equivalent, the fairness of a given annexation is the ultimate question that we seek to answer." 644 So. 2d at 1172 (citing *Western Line Consol. School Dist. v. City of Greenville*, 465 So. 2d 1057 (Miss. 1985)).

¶69. The Mayor testified that many of the residents of the PAA participate in the City's parks and recreational programs and civic and charitable organizations. In addition, the residents of the PAA already enjoyed the benefits of safe shopping and work areas, and their children had good recreational and school facilities.

¶70. Watson testified that he looked at the economic impact of the City's taxes on Week's property. Watson stated that Weeks would have to pay an additional $0.85 on each of his 151 acres located in the PAA. Watson also completed a study for projected City taxes for other residents, based on the value and type of home on the property and on the value of their vehicles. In addition, Watson considered the costs of City garbage collection and City fire protection and offset these costs by the reduction in fire insurance premiums and costs paid to Hinds County for similar services such as garbage collection. Based on the study, Watson found that only two categories of the study had increased taxes in an amount higher than $54.45. Watson stated that, in some instances, the study showed significant savings of more than $1,200. This study did not consider any additional savings a taxpayer might receive with an itemized income tax deduction for City taxes. Watson opined that most of the people annexed by the City would save money while enjoying the increased benefit of City services for their tax dollars.

¶71. Weeks argues that the chancellor erred by finding that the residents of the PAA would receive value from the City in exchange for their tax dollars. As this Court has held, the fact

that residents in a proposed PAA will have to pay more taxes is not sufficient to defeat annexation. *City of Hattiesburg*, 840 So. 2d at 93. Here, the Mayor and Watson both testified to the benefits that the PAA residents would receive for their tax dollars. In addition, Watson conducted a study that showed that many residents of the PAA could save tax dollars with the annexation. Therefore, we find that this argument is without merit. The Hales question the chancellor's findings that a large number of the PAA residents sought annexation. Regardless of the exact number of residents who favor annexation, testimony supported that some of the residents actively sought annexation. The exact number of residents that sought annexation, by itself is not enough to defeat the annexation.

¶72. We find that the chancellor's findings for this indicium were supported by substantial credible evidence and were reasonable.

**10. Impact on minority voting.**

¶73. The chancellor stated:

> Clinton's annexation will not have any significant impact on the voting strength of any minority group. In fact, the voting strength of the African-American voting population will rise slightly from 19.6 to 20 percent. Additionally, the Mississippi Supreme Court has stated that this factor should not be afforded great weight in cases where it is not raised by minorities. *See Columbus*, 644 So. 2d at 1180; *Jackson*, 551 So. 2d at 868. That being the case here, this Court finds that the indicium of reasonableness has been met.

In *City of Hattiesburg*, 840 So. 2d at 93, this Court held:

> We held in *Matter of Extension of Boundaries of City of Columbus*, 644 So. 2d 1168, 1180 (Miss. 1994), that where voting strength is in dispute, we do not afford great weight in cases where the issue is not raised by one with standing. The objectors presented no evidence of dilution nor did they offer any minority objector witnesses aggrieved by such a dilution, and the chancellor so found that the proposed annexation would have "little, if any, effect on minority voting strength."

*See also* ***In the Matter of the Enlargement and Extension of the Mun. Boundaries of the City of Southaven***, 864 So. 2d 912, 957 (Miss. 2004) ("The chancellor found that, since no one lived in the PAA, this factor has no relevance. We find that the chancellor's finding that this factor is neutral was not manifestly wrong and that the finding was supported by substantial and credible evidence."); ***In re Enlargement and Extension of Mun. Boundaries of City of Biloxi***, 744 So. 2d at 284 ("This factor should not be afforded great weight since it was not raised by an African-American."). *See also* ***Prestridge v. City of Petal***, 841 So. 2d 1048, 1057 (Miss. 2003).

¶74. Weeks did not address this indicium of reasonableness in his brief. The Hales concede that the record supports the chancellor's findings that minority voting strength will increase with the annexation.

¶75. We find that the chancellor's findings for this indicium were supported by substantial credible evidence and were reasonable.

**11. Enjoyment of economic and social benefits of the municipality without paying a fair share of taxes.**

¶76. Weeks and the Hales argue that the chancellor erred by finding that the PAA residents benefit from the City without paying their fair share of taxes. In particular, Weeks argues that the City provides no "free" police or fire protection to the PAA. Weeks and the Hales also argue that PAA residents do not benefit by having their children attend the schools in the Clinton School District.

¶77. The chancellor stated:

> The proposed annexation area has grown and developed in large part due to its proximity to Clinton. Being located on the City's periphery has given property

31

owners the opportunity to reap the resulting economic benefits. Citizens residing in the PAA benefit from the availability of jobs and increased commercial activity in Clinton and the surrounding area, as well as the use of Clinton facilities. Residents in these areas enjoy its recreational facilities, the proximity of medical services, its libraries and community centers. Further, these residents currently enjoy the benefit of their children being in the Clinton School District.

The PAA's residents benefit from their proximity to the City of Clinton in several different ways and the Court finds that this indicium of reasonableness weighs in favor of Clinton's annexation.

¶78. The Mayor previously testified to the shopping and working areas that benefit the PAA residents as well as the parks and recreational areas available for PAA residents. Watson stated that the Mayor's previous testimony of the benefits that PAA residents received by the close proximity to the City summed up most of his testimony too. However, Watson also pointed out that while PAA residents were in the City shopping or working, they enjoyed police protection and other municipal services. In addition, Watson said that, while a portion of the City sales taxes was rebated to the City, this rebate on the taxes alone did not fully support the municipal services available to everyone shopping and working in the City.

¶79. Weeks implies that the PAA residents never received any "free" police protection or other services by the City. However, Watson clearly qualified his statements by stating that while PAA residents were *in the City,* they enjoyed City services.

¶80. We find that the chancellor's findings for this indicium were supported by substantial credible evidence and were reasonable.

**12. Any other factors that may suggest reasonableness.**

¶81. Weeks argues that the chancellor erred in deciding to grant the annexation based on a totality of the circumstances. We disagree. The chancellor clearly stated in his findings of

fact and conclusions of law, which were incorporated by reference into the final judgment, that "[t]he Court, after considering the evidence and relevant law, finds that, *under the totality of the circumstances*, Clinton's annexation is reasonable." (Emphasis added). The chancellor then wrote more than eighteen pages in his findings of fact and conclusions of law addressing the twelve indicia of reasonableness. In addition, the final judgment stated that: "Further, *upon a consideration of the totality of the circumstances*, this Court finds that the proposed annexation is both reasonable and of public necessity." (Emphasis added).

¶82. Weeks also argues that chancellor failed to address the matter of fairness as it related to the residents of the PAA. Specifically, Weeks makes the same argument addressed under indicium nine concerning whether the residents of the PAA received something of value in exchange for their tax dollars. This issue was discussed adequately under the ninth indicium of reasonableness concerning economic and other impact of an annexation of PAA residents and will not be addressed again.

¶83. Weeks also argues that the chancellor should have given more weight to the many objectors who appeared and testified against the annexation. The chancellor was present for the entire hearing and heard all the testimony from the City as well as from the objectors. Nevertheless, the chancellor considered the totality of the circumstances and found in favor of annexation.

¶84. Weeks asserts that some of the areas in the PAA are wetlands, and the chancellor should have considered the effect the City ordinances would have on the more rural areas of the PAA. The chancellor heard all the testimony from the City and the objectors and

33

determined that, despite some opposition, under the totality of the circumstances the annexation was reasonable.

¶85. The Hales simply argue that the City provided no other factors to consider and in their opinion much of the testimony was unsubstantiated by the City. Without readdressing each indicium of reasonableness already discussed, we find that this issue is addressed in previous discussions as it relates to different indicia of reasonableness and will not be discussed again.

¶86. The chancellor stated:

> The annexation as proposed by Clinton is reasonable based on specific foregoing indicia of reasonableness, as well as several other factors.
>
> The City of Clinton has studied the proposed annexation for over four (4) years and has pursued annexation in large part due to the requests for annexation of the residents of the proposed annexation area. The City has considered all relevant economic factors and has constructed a two phase plan for complete assimilation of the proposed annexation area. The amount of time and energy that has been expended in this proposal is great and the results are clear evidence of the reasonableness of this annexation.
>
> Therefore, this Court finds that the annexation of the following areas is reasonable and is of public necessity.

¶87. We find that the chancellor's findings for this indicium were supported by substantial credible evidence and were reasonable.

**II.      Whether the chancellor erred by failing to support its findings of fact and conclusions of law regarding the twelve indicia of reasonableness applicable to the annexation.**

¶88. Weeks reargues most of the same concerns he set forth under each of the indicia of reasonableness cited in Issue I maintaining that the City did not provide testimony concerning all the factors for the indicia of reasonableness for need to expand potential health hazards, and need for municipal services. In ***In re Extension of the Boundaries of***

34

*Winona*, 879 So. 2d at 974-84, this Court held that the various listed factors *may or may not*

include all the factors. We find that this issue is without merit.

### III. Whether the chancellor erred by denying Weeks's motion for new trial or to reopen case and take additional testimony and make new findings of fact.

¶89. Weeks argues that the chancellor erred by denying his motion for new trial or to

reopen the case and take additional testimony and make new findings and judgment. Weeks

also argues that the chancellor erred by failing to conduct a hearing. The heart of Weeks's

argument centers on the objectors' lack of counsel at the annexation hearing. Weeks's

motion stated, in part:

> [T]he decision of the court rendered in the Final Judgment entered on February 17, 2006, is against the overwhelming weight of the evidence, is wholly unsupported by the evidence adduced in court and constitutes as abuse of discretion. The judgment is unsupported by the evidence adduced in court because the annexation was not reviewed from the perspective of the defendants. The landowners objecting [to] the annexation were not represented by counsel. Without the benefit of counsel to adequately set forth their position, the court was not provided with sufficient information to determine the issue of whether the annexation was reasonable from the standpoint of those objecting the annexation. The court should order a new trial or reopen the case so as to allow more evidence to be presented such that the court can render a judgment which will comport with the true facts as shown by credible evidence.

¶90. This Court earlier vacated and remanded the issue of annexation for failure to address

the twelve indicia of reasonableness to support the decision to approve the annexation into

the City. *Weeks,* 920 So. 2d at 458. The opinion stated the following:

> Because the chancellor failed to weigh and apply the twelve indicia of reasonableness on the record in order to determine whether the annexation was reasonable under the totality of the circumstances, *we vacate the chancellor's judgment and remand this case with instructions to the chancellor to provide*

35

*more detailed reasoning on the record as to each indicium of reasonableness and to enter a judgment in accordance with those findings and conclusions*.

(Emphasis added). The motion was filed on February 27, 2006. The next day, the chancellor denied the motion. The order denying the motion stated in part:

> The Supreme Court of Mississippi recently vacated and remanded a previous judgment and order of this Court approving the plan of annexation of the City of Clinton. The Supreme Court of Mississippi instructed this Court, upon remand, to "provide more detailed reasoning on the record as to each indicium of reasonableness and to enter a new judgment in accordance with those findings and conclusions. Accordingly, this Court entered a Findings of Fact and separate Final Judgment detailing its reasoning on the record as to each indicium of reasonableness and approving the plan of annexation of the City of Clinton on February 17, 2006.
>
> Certain Defendants request that this Court grant a new trial or reopen the case and take additional testimony. However, this Court is not persuaded that same is either necessary or just. All interested parties in this matter were properly notified of the proceedings prior to a hearing on this matter in June 2003. All interested parties were provided with an opportunity to be heard and, in fact, the Court heard evidence from objectors to the annexation at [the] hearing. The Court properly held [a] hearing on this matter and allowed testimony and evidence from both the City of Clinton and the objectors to the annexation. After a fair and impartial hearing, this Court entered its Order. The Mississippi Supreme Court vacated that Order only for failure to weigh and apply the twelve indicia of reasonableness on the record; there was no finding of inadequate notice, inadequate opportunity to be heard or impropriety during the course of the hearing.

¶91. Reversal for failure to grant a new trial will occur only if it is clear that the trial court abused its discretion in doing so. *Chisolm v. Eakes*, 573 So. 2d 764, 769 (Miss. 1990) (citing *Maryland Cas. Co. v. City of Jackson*, 493 So. 2d 955, 961 (Miss. 1986)); Miss. R. Civ. P. 59. Here, the chancellor was instructed by this Court in its previous opinion to provide more detailed reasoning on the record as to each indicium of reasonableness and to enter a judgment in accordance with those findings and conclusions.

36

¶92.    This Court did not require the chancellor to conduct a new annexation hearing. Weeks complains that the objectors had no representation of legal counsel at the hearing. This hearing was noticed, and we find that Weeks and the other objectors had the opportunity to have counsel with them at this hearing.  A person who is proceeding pro se should be "held to the same substantive requirements as a represented person pursuing this cause of action." *Ivy v. Merchant*, 666 So. 2d 445, 449-450 (Miss. 1995); *see also* **Young v. Benson**, 828 So. 2d 821, 824 (Miss. Ct. App. 2002)**; Routt v. Mississippi Empl. Sec. Comm'n**, 753 So. 2d 486, 487 (Miss. Ct. App. 1999)("This Court holds pro se parties to the same rules of procedure and substantive law as represented parties.")  Further, the objectors could have retained counsel to represent them at the hearing had they chosen to do so.  Accordingly, we find that this issue is without merit.

### IV.    Whether the chancellor erred by approving the annexation since the City of Clinton cannot acquire the right to consumer water services previously granted to the North Hinds Water Association.

¶93.    Weeks contends that the chancellor erred by allowing the annexation because the City failed to meet the twelve indicia of reasonableness. Specifically, Weeks claims that the City cannot acquire the right to furnish water to all of the PAA because the area is controlled by the exclusive franchise previously granted to the North Hinds Water Association.  Therefore, Weeks argues that it will be unable to provide water services to all of the PAA.  Weeks claims that the North Hinds Water Association is under the dominion of the federal government through the Department of Agriculture.

37

¶94.  This Court in ***Prestridge v. City of Petal***, 841 So. 2d 1048, 1054 (Miss. 2003), held

that an issue not raised at the trial level is not properly preserved for appeal.  This Court held,

in part:

> In order to assign error on appeal, the issue must be raised at the trial
> level or it is waived.  ***Read v. State***, 430 So. 2d 832, 838 (Miss. 1983). Nothing
> in the record reveals that Petal raised its water and sewer rates or raised the
> rates to fund proposed improvements especially since the rate increase
> allegedly happened after the conclusion of the trial in this matter.  This
> assignment of error has not been properly preserved for the purposes of this
> appeal.

*Id*.  Here, Weeks did not raise this issue at the hearing nor in his motion for new trial.  As

such, Weeks is procedurally barred on appeal from raising this assignment of error.  In

addition, Weeks references an attached exhibit concerning the documents from the

Mississippi Public Service Commission.  These documents are not part of the certified record

on appeal.  "[T]his Court may not act upon or consider matters which do not appear in the

record and must confine itself to what actually does appear in the record."  ***Wooldridge v.***

***Wooldridge***, 1998 Miss. LEXIS 356 (Miss. 1998) (citing ***Dew v. Langford***, 666 So. 2d 739,

746 (Miss. 1995)).  Accordingly, we find that this issue is procedurally barred.

## CONCLUSION

¶95.  For the reasons stated herein, we find the judgment of the Second Judicial District of

the Chancery Court of Hinds County, Mississippi is affirmed.

¶96.  **AFFIRMED.**

**SMITH, C.J., DIAZ, P.J., CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.  WALLER, P.J., NOT PARTICIPATING**.

38